JORGE CALDERÓN MORALES, demandante y recurrido, v. ADMINISTRACIÓN DE LOS SISTEMAS DE RETIRO, ETC., demandada y peticionaria; ALBERTO DÍAZ MORALES (DOÑA CONCHITA TIRADO, VDA.), demandante y recurrido, v. ADMINISTRACIÓN DE LOS SISTEMAS DE RETIRO, ETC., demandada y peticionaria; EMILIA TORRES VDA. DE ROMERO, demandante y recurrida, v. ADMINISTRACIÓN DE LOS SISTEMAS DE RETIRO, ETC., demandada y peticionaria; CARMEN COLÓN SANTIAGO VDA. DE QUIÑONES, demandante y recurrida, v. JUNTA DE SÍNDICOS DE LOS SISTEMAS DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO Y LA JUDICATURA, demandada y peticionaria; BERTA L. MEJÍAS MÉNDEZ VDA. DE RAMÍREZ, demandante y recurrida, v. ADMINISTRACIÓN DE LOS SISTEMAS DE RETIRO, ETC., demandada y peticionaria; EDUARDO LÓPEZ LUIGGI, ETC., demandante y recurrido, v. ADMINISTRACIÓN DE LOS SISTEMAS DE RETIRO, ETC., demandada y recurrente; EMMA DEL VALLE SOTO VDA. DE MARTÍNEZ, demandante y recurrida, v. ADMINISTRACIÓN DE LOS SISTEMAS DE RETIRO, ETC., demandada y peticionaria.

*Números:* CE-88-11
CE-88-19
CE-88-20
CE-88-21
CE-88-22
CE-88-89
CE-88-187

*Resueltos:* 26 de febrero de 1992

*Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General,* y *Nilda P. Fuentes Ortiz, Procuradora General Auxiliar,* abogados de la peticionaria; *Rafael Quiñones Vigo,* abogado de Jorge Calderón Morales, recurrido; *Luis Muñoz Rivera,* abogado de Alberto Díaz Morales (Doña Conchita Tirado, Vda.), recurrida; *Juan Rosario Mercado,* abogado de Emilia Torres Vda. de Romero, recurrida; *Raúl Rodríguez Santiago,* abogado de Carmen Colón Santiago Vda. de Quiñones, recurrida; *Lionel Fernández Méndez,* abogado de Eduardo López Luiggi, recurrido; *Juan Rosario Mercado,* abogado de Emma Del Valle Soto Vda. de Martínez, recurrida.

El Juez Asociado Señor Rebollo López emitió la opinión del Tribunal.

El presente recurso nos permite resolver la interrogante de si un ex empleado público, el cual recibe la pensión que *por derecho propio o por mérito* provee el Sistema de Retiro de los Empleados del Gobierno y la Judicatura (Sistema de Retiro) al amparo de las disposiciones de la Ley Núm. 447 de 15 de mayo de 1951 (3 L.P.R.A. secs. 761–788), tiene derecho a recibir la pensión adicional que, *por razón de viudez o dependiente de policía pensionado*, proveen las Leyes Núms. 127 de 27 de junio de 1958 (25 L.P.R.A. sec. 376 *et seq.*) y 169 de 30 de junio de 1968 (25 L.P.R.A. sec. 391 *et seq.*).

I

Por envolver la misma cuestión de derecho, y en esencia los mismos hechos, consolidamos los siete (7) recursos de epígrafe. Resumimos, a continuación, los hechos relevantes de cada recurso.

1. *Jorge Calderón Morales (Delia R. Marcano Ramos, Vda.) v. Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura.*

El Sr. Jorge Calderón Morales trabajó para la Policía de Puerto Rico en el puesto de Teniente I. Solicitó y le fueron otorgados en febrero de 1961 los beneficios de una pensión por incapacidad ocupacional. Su esposa, la Sra. Delia R. Marcano, trabajó durante treinta (30) años en el Departamento de Instrucción Pública. El 4 de junio de 1982 el Sistema de Retiro le concedió una pensión por mérito bajo las disposiciones de la Ley Núm. 447, ante. El señor Calderón falleció en junio de 1982 y la señora Marcano solicitó entonces los beneficios de una pensión como viuda de policía al amparo de la Ley Núm. 169, ante. Se le concedieron

$345.90 mensuales, cantidad que equivalía, conforme a la citada Ley Núm. 169, al sesenta por ciento (60%) de la pensión recibida por su esposo mientras vivía. No obstante, en mayo de 1985 el Sistema de Retiro envió carta a la señora Marcano indicándole que se le suspendería la pensión que percibía como viuda, puesto que la pensión por mérito que también recibía resultaba ser mayor, y que conforme al Art. 11 de la Ley Núm. 169, ante, 25 L.P.R.A. sec. 399, le correspondía solamente el beneficio de una pensión, aquella que fuese mayor.

La señora Calderón solicitó reconsideración al Administrador de los Sistemas de Retiro (Administrador), quien se reafirmó en la suspensión de la pensión. Siguiendo el trámite administrativo, la recurrida apeló esta decisión ante la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (Junta), que por su parte confirmó la determinación del Administrador. Ante esa situación, oportunamente la señora Calderón solicitó revisión judicial ante el Tribunal Superior, Sala de San Juan. Mediante sentencia de fecha de 31 de julio de 1987 el tribunal de instancia revocó la decisión administrativa y ordenó la reinstalación de la pensión suspendida a la señora Calderón, retroactivo a la fecha de la suspensión.

*2. Alberto Díaz Morales (Doña Conchita Tirado, Vda.) v. Administración de los Sistemas de Retiro, etc.*

El Sr. Alberto Díaz Morales recibía del Sistema de Retiro una pensión luego de haber servido cierto número de años como miembro de la Policía de Puerto Rico. Al fallecer, su viuda Doña Conchita Tirado solicitó los beneficios de pensión bajo la Ley Núm. 169, ante, como heredera del policía fallecido. Ella había sido empleada del Gobierno de Puerto Rico por el espacio de veinticuatro (24) años y recibía desde 1965 una pensión por incapacidad del mencio-

nado Sistema de Retiro. Estuvo recibiendo ambas pensiones desde noviembre de 1977 hasta mayo de 1983, cuando se le suspendieron los pagos de la pensión por incapacidad bajo la Ley Núm. 447, ante, por entender la Administración de los Sistemas de Retiro que no podía recibir una doble pensión. Se le permitió continuar recibiendo la pensión por viudez bajo la Ley Núm. 169 por ser ésta la mayor y le reclamaron la cantidad de $10,542.25 por concepto de pagos hechos indebidamente. De dicha determinación la señora Tirado acudió en reconsideración al Administrador y luego, en apelación, a la Junta. En ambas ocasiones se determinó que no procedía el pago de dos (2) pensiones, aunque la Junta revocó en cuanto al pago de los $10,541.25 en virtud de la Ley Núm. 13 de 13 de abril de 1986 (3 L.P.R.A. sec. 777 n.) que condonaba la deuda. Inconforme con dicha resolución, la señora Tirado acudió en revisión al Tribunal Superior, Sala de San Juan, el cual revocó la decisión de la Junta, ordenando la reinstalación de la pensión retroactiva a la fecha en que fue suspendida.

3. *Emilia Torres Vda. de Romero v. Administración de los Sistemas de Retiro, etc.*

Luego de más de dieciocho (18) años de servicios al Gobierno de Puerto Rico como técnica de laboratorio en el Departamento de Salud, la señora Torres se pensionó por incapacidad no ocupacional bajo la Ley Núm. 447, ante, desde enero de 1960. A su esposo, el ex policía Ramón Romero Rosario, se le otorgó una pensión ocupacional bajo la citada Ley Núm. 447, la cual disfrutó desde mayo de 1960 hasta su muerte en junio de 1972. El Sistema de Retiro aprobó entonces a la señora Torres una pensión por concepto de viudez según dispone la Ley Núm. 169, ante, la cual recibió además de la suya hasta abril de 1983 cuando fue notificada por el Sistema de Retiro de la suspensión de la pensión menor por alegadamente así disponerlo el Art. 11 de la Ley Núm. 169, ante. Le comunicaron además de

una deuda ascendente a $15,646.40 por concepto de pagos indebidos. Luego de solicitar los remedios administrativos pertinentes, mediante los cuales el Sistema de Retiro se reafirmó en su denegatoria a pesar de condonar la deuda acumulada por los pagos simultáneos de las dos (2) pensiones, la señora Torres acudió en revisión ante la Sala de San Juan del Tribunal Superior, el cual revocó ordenando reinstalar la pensión retroactivo a la fecha de suspensión.

4. *Carmen Colón Santiago, Vda. de Juan B. Quiñones Rivera v. Junta de Síndicos de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura.*

La Sra. Carmen Colón percibía una pensión por retiro bajo las disposiciones de la Ley Núm. 447, ante, desde enero de 1969 luego de haber trabajado durante treinta (30) años como empleada del Gobierno de Puerto Rico. En agosto de 1985 su esposo, Juan B. Quiñones Rivera, quien a esa fecha era policía pensionado, falleció. Conforme dispone la Ley Núm. 169, ante, solicitó y se le concedió pensión por viudez. En marzo de 1986 la Administración de Sistemas de Retiro suspendió los pagos recibidos por la recurrente al amparo de la Ley Núm. 447, ante, fundamentando su acción en lo improcedente de una doble pensión bajo las disposiciones de la Ley Núm. 169, ante. Al igual que en los casos anteriores, tanto en reconsideración ante el Administrador como en apelación ante la Junta, se confirmó la suspensión de la pensión. Radicado el correspondiente recurso de revisión ante el Tribunal Superior, Sala de San Juan, la decisión administrativa fue revocada, ordenándose la reinstalación de la pensión.

5. *Berta L. Mejías Méndez Vda. de Ramírez v. Administración de los Sistemas de Retiro, etc.*

La señora Mejías Méndez solicitó de los Sistemas de Retiro de los empleados del E.L.A. los beneficios de viuda

de policía pensionado conforme a la Ley Núm. 169, ante. Se le concedió la pensión en febrero de 1974. Varios meses más tarde, en junio de 1974, la señora Mejías se jubiló del servicio público y le fue concedida una pensión por edad y años de servicio conforme a la Ley Núm. 447, ante. Hasta diciembre de 1981 la aquí recurrida recibió ambas pensiones, pero en esa fecha se le descontinuaron los pagos de pensión por edad y años de servicio, informándosele que le correspondía únicamente el pago por pensión como viuda, ya que ese era el mayor de los dos, y por lo tanto, el único al que alegadamente tenía derecho según el Art. 11 de la Ley Núm. 169, ante. Agotados todos los remedios administrativos sin éxito, la señora Mejías acudió en revisión al Tribunal Superior, Sala de San Juan, el cual le concedió término al organismo administrativo para exponer su posición. Transcurrido, en exceso, el término concedido sin recibir contestación, el tribunal de instancia dictó sentencia revocando la decisión administrativa y ordenando la reinstalación de la pensión.

6. *Eduardo López Luiggi, etc. v. Administración de los Sistemas de Retiro, etc.*

Don Eduardo López Luiggi fue pensionado por la Policía de Puerto Rico por incapacidad ocupacional en septiembre de 1955 bajo las disposiciones de la Ley Núm. 189 de 2 de mayo de 1951 (25 L.P.R.A. ant. sec. 361 *et seq.*). Don Eduardo murió en 1959 y su viuda Doña Rufina Dosal, advino acreedora de los beneficios por muerte de la citada Ley Núm. 189, por lo cual comenzó a percibir la pensión que por incapacidad recibía su esposo. La señora Dosal, mujer policía durante veintiséis (26) años, continuó trabajando y aportando al Sistema de Retiro por nueve (9) años posteriores a la muerte de su esposo, y en 1968 se jubiló acogiéndose a los beneficios de pensión por edad y años de servicio bajo la Ley Núm. 447, ante. En marzo de 1982 la

Administración de Sistemas de Retiro comunicó a la señora Dosal que, por disposición del Art. 9 de la Ley Núm. 127, ante, 25 L.P.R.A. sec. 384, ella era acreedora solamente a una pensión, razón por la cual se le estaban suspendiendo sus beneficios por retiro. Se le informó además de una deuda por concepto de pago indebido de doble pensión ascendente a $36,387.05. Esta deuda fue posteriormente condonada. Al igual que en los casos anteriores, tanto en reconsideración como en apelación ante la Junta, se confirmó la decisión, la cual posteriormente fue revocada en revisión por la Sala de San Juan del Tribunal Superior.

7. *Emma Del Valle Soto, Vda. de Martínez v. Administración de los Sistemas de Retiro, etc.*

El ex policía Domingo Martínez Arzola se acogió en 1963 a los beneficios de una pensión por mérito bajo la Ley Núm. 447, ante, luego de más de treinta (30) años de servicio al Gobierno. Su esposa Emma del Valle también se acogió a los beneficios de la citada Ley Núm. 447 al jubilarse en 1967 luego de haber prestado treintinueve y medio (39.5) años de trabajo como administradora telegrafista en la Autoridad de Comunicaciones. A raíz de la muerte de su esposo solicitó, a tenor con la Ley Núm. 169, ante, la pensión como viuda de policía retirado. Ésta se le denegó por razón de ella estar recibiendo unos beneficios de retiro que eran mayores a la pensión solicitada. Nuevamente en esta ocasión el caso fue llevado por los canales administrativos de reconsideración y apelación, confirmándose la denegatoria de pensión. Finalmente, el Tribunal Superior, Sala de San Juan, revocó la denegatoria de pensión y la orden sobre el pago retroactivo del dinero recibido.

Con el propósito de resolver la controversia planteada en los referidos siete (7) recursos, el tribunal de instancia aplicó el razonamiento que este Tribunal utilizara

en *García Martínez v. Gobernador*, 109 D.P.R. 294 (1979). En aquella ocasión nos enfrentamos a, e interpretamos, el inciso (a) del Art. 1 de la Ley Núm. 105 de 28 de junio de 1969 (3 L.P.R.A. sec. 788a(a)). Dicha disposición legal concede beneficios a cónyuges supérstites e hijos menores e incapacitados de participantes del Sistema de Retiro del Gobierno y/o de la Judicatura que al momento de su muerte ya estuvieren recibiendo una anualidad por retiro o incapacidad, pero priva de tal pensión a dichos beneficiarios si, al momento de fallecer el participante, éste estaba adicionalmente cubierto por el Título II de la Ley Federal de Seguridad Social.([1]) Como es sabido, *al rechazar una interpretación literal y restrictiva de dicho estatuto* y respecto a un participante de la Judicatura, expresamos en *García Martínez v. Registrador*, ante, pág. 301, que:

>...la persona que recibe un beneficio bajo la Ley Federal de Seguridad Social en consideración a empleos y aportaciones anteriores y también recibe un beneficio de naturaleza similar en consideración a servicios prestados mientras participaba en el Sistema de Retiro de la Judicatura, *no está recibiendo doble beneficio. Cada derrama tiene su causa y no podemos leer en la Ley intención de privar al participante de una por estar recibiendo la otra.* (Énfasis suplido.)

En la referida decisión expresamos, en adición:

>Los participantes [de la Judicatura], a través de las aportaciones que hacen, *compran su derecho a estos beneficios.* ... Generalmente, ser acreedor de un beneficio depende de haberlo

---

([1]) Establecía dicho inciso, *en lo pertinente*, que:

"(a) Al fallecer un participante del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades y/o del Sistema de Retiro de la Judicatura de Puerto Rico mientras estuviere recibiendo una anualidad por retiro o por incapacidad de dicho Sistema, el cónyuge supérstite e hijos menores o física y/o mentalmente incapacitados tendrán derecho a una pensión que se determinará de acuerdo a lo dispuesto en esta sección.

*"Si el participante retirado, al momento de fallecer estuviese cubierto por el Título II de la Ley Federal de Seguridad Social, las personas antes mencionadas no tendrán derecho a la pensión que por esta sección se concede."* (Énfasis suplido.) 3 L.P.R.A. sec. 788a(a).

"comprado" y no de la necesidad de la persona. (Énfasis suplido.)

Haciendo una analogía entre el caso de *García Martínez v. Registrador*, ante, y los siete (7) recursos que hoy tenemos ante nuestra consideración, razonó el foro de instancia que como las pensiones por derecho propio, que en su condición de ex empleadas del Gobierno recibían las recurridas, y la otra, como viuda de policía retirado o fallecido, fueron "compradas" por separado y no estaban relacionadas entre sí, el derecho a recibir una de ellas era totalmente independiente del derecho a recibir la otra.

El Procurador General, en representación de la Administración de los Sistemas de Retiro, acudió ante este Tribunal solicitando que revisáramos las sentencias dictadas en los casos de epígrafe. Sostiene el Procurador, planteamiento que hace en relación a todos los recursos, que conforme nuestro ordenamiento jurídico estas personas no tienen derecho a recibir una "doble pensión", esto es, una por derecho propio que provee el Sistema de Retiro, Ley Núm. 447, ante, y otra que, por razón de viudez o dependiente de policía pensionado, establece tanto la Ley Núm. 169 como la Ley Núm. 127, ante.

Por entrañar una cuestión de alto interés público, sobre la cual no nos habíamos expresado anteriormente, decidimos expedir los autos radicados. Estando en condiciones de resolver los mismos, procedemos a así hacerlo.

## II

La citada Ley Núm. 447, Ley del Sistema de Retiro de los Empleados del Gobierno y la Judicatura de Puerto Rico, es una *ley general* que provee beneficios de retiro para la gran mayoría de los empleados del gobierno estatal. La misma fue aprobada luego de llevarse a cabo un extenso y abarcador estudio, por parte del legislador, de

diferentes y distintas leyes de pensiones existentes en otras jurisdicciones. *In re Castro y Torres Braschi*, 73 D.P.R. 564 (1952). Prácticamente toda persona que sea empleado del Gobierno de Puerto Rico está obligado a pertenecer al Sistema de Retiro y quedará sujeto a las disposiciones de la referida Ley Núm. 447.(²) Su Art. 20 (3 L.P.R.A. sec. 780) establece que se entenderá que todo empleado miembro del Sistema de Retiro *consiente y conviene* en que se le hagan los descuentos correspondientes de su salario gubernamental para fines de retiro, facultándose al Secretario de Hacienda de Puerto Rico a realizar los mismos. En virtud de dicho consentimiento, el empleado obtiene un derecho garantizado sobre sus aportaciones y al "jubilarse" tiene *derecho a recibir una anualidad* por cuanto el propósito de la referida legislación es proveerle un ingreso mínimo de subsistencia al empleado jubilado. *In re Castro y Torres Braschi*, ante. Por otro lado, tanto la citada Ley Núm. 169 como la referida Ley Núm. 127 son *leyes especiales* que proveen beneficios de pensiones a grupos específicos de empleados públicos o a los beneficiarios de éstos.

La posición del Procurador General de Puerto Rico es a los efectos de que el Sistema de Retiro descansa sobre el principio o premisa de que nadie tiene derecho a recibir más de una pensión. En seis (6) de los siete (7) recursos ante nuestra consideración, aquellos que surgen o tienen relación con la citada Ley Núm. 169, aduce el Procurador General que, aun cuando es correcto que del Art. 11 de la Ley Núm. 169 (25 L.P.R.A. sec. 399),(³) no se puede inferir

---

(²) El ingreso al Sistema de Retiro es discrecional únicamente para los Secretarios del Gobierno, los ayudantes del Gobernador de Puerto Rico, los jefes de agencias e instrumentalidades públicas, los miembros de comisiones y juntas nombradas por el Gobernador, el Contralor y los miembros de la Asamblea Legislativa.

(³) Establece el citado Art. 11 de la Ley Núm. 169 que:

"En el caso que los beneficiarios o herederos de policías pensionados tuvieren derecho bajo cualesquiera leyes vigentes a una pensión mayor a la aquí dispuesta

categóricamente que una persona está impedida de recibir una pensión como viuda y otra por derecho propio, del Art. 14 de la Ley Núm. 447 (3 L.P.R.A. sec. 774)(⁴) sí surge con claridad dicha prohibición.

Respecto al único de los recursos bajo la antes citada Ley Núm. 127, expone el Procurador General que del texto del Art. 9 de la Ley Núm. 127 (25 L.P.R.A. sec. 384)(⁵) surge la prohibición de que una persona reciba dos (2) pensiones a la misma vez. En cuanto a este recurso reproduce, en adición, el argumento de la prohibición expresa alegadamente contenida en el citado Art. 14 de la referida Ley Núm. 447.

## III

No hay duda de que cuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir con su espíritu. Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14; *Ferretería Matos, Inc. v. P.R. Tel. Co.*, 110 D.P.R. 153, 156 (1980). Es precisamente debido a lo anteriormente expresado que los tribunales de justicia únicamente están autorizados a interpretar las leyes "cuando, entre otras, éstas no son claras o concluyentes sobre un punto en particular; cuando el

---

por motivo del fallecimiento de dicho funcionario, se pagará la pensión que resulte ser mayor."

(⁴) En lo pertinente a la cuestión ante nuestra consideración, establece el referido Art. 14 de la Ley Núm. 447 que:

"Todo participante a quien se concediere, mediante legislación especial, una pensión o anualidad, no obstante cualquier otra disposición de las secs. 761 *et seq.* de este título en contrario, perderá todos sus derechos a retiro y otros beneficios concedidos al amparo de las secs. 761 *et seq.* de este título; y perderá, además todo derecho al rembolso de sus aportaciones al Sistema."

(⁵) El citado Art. 9 de la Ley Núm. 127, en lo pertinente, establece que:

"Las pensiones por incapacidad y beneficios por muerte que conceden las secs. 376 a 387 de este título serán incompatibles con cualesquiera otros beneficios por defunción o pensión que provean los fondos de pensiones en vigor, o que en el futuro se crearen, para los empleados del Gobierno de Puerto Rico, y con cualesquiera beneficios similares provistos por ley con cargo a fondos públicos."

objetivo, al realizarlo, es el de suplir una laguna en la misma; o cuando, con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en particular, *la justicia así lo requiere*". (Énfasis suplido.) *Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 214 (1990).

▇ Ahora bien, la interpretación y aplicación de las leyes debe hacerse a tono con el propósito social que las inspira y sin desvincularlas del problema humano que persiguen. *Riley v. Rodríguez Pacheco*, 124 D.P.R. 733 (1989). En su interpretación debe ser preeminente la realidad humana de la vida, no la abstracción de reglas eternas e inmutables. *Figueroa v. Díaz*, 75 D.P.R. 163 (1953); *Morales v. Adm. Sistemas de Retiro*, 123 D.P.R. 589 (1989).

▇ Es probablemente debido a ello que en *Acuña v. Junta de Retiro*, 58 D.P.R. 94 (1941) —al referirnos a las leyes que versan sobre pensiones— expresamos que la jurisprudencia ha sostenido de forma uniforme que las leyes que crean derechos al disfrute de pensiones *se deben interpretar liberalmente a favor del beneficiario a fin de que se cumpla el propósito reparador para las cuales fueron aprobadas.* Véase *In re Castro y Torres Braschi*, ante; *Sánchez v. A.S.R.E.G.J.*, 116 D.P.R. 372 (1985). Esa es la razón de ser de la norma jurisprudencial a los efectos de que la fuerza y efecto de estas leyes no debe conformarse estrictamente a los términos literales del estatuto. *Morales v. Adm. Sistemas de Retiro*, ante; *Acuña v. Junta de Retiro*, ante.

## IV

La antes mencionada norma jurisprudencial de interpretación liberal en lo referente a leyes de pensiones fue la que, *sin lugar a dudas*, motivó a este Tribunal a resolver, *como lo hizo*, el antes citado caso de *García Martínez v. Registrador*, ante, a pesar de la clara prohibición en con-

trario contenida en el citado Art. 1 de la referida Ley Núm. 105. Conforme al mismo, los beneficiarios de un participante del Sistema de Retiro, esto es, el cónyuge supérstite e hijos menores de edad, "no [tenían] derecho" a recibir, al fallecimiento de éste, un por ciento de la pensión que recibía el participante si éste, "al momento de fallecer estuviese cubierto por el Título II de la Ley Federal de Seguridad Social ...". 3 L.P.R.A. sec. 788a(a).

Ello no obstante, y como indicáramos anteriormente, este Tribunal resolvió que los beneficiarios de ese participante *no* podían ser privados de la pensión que concede la citada Ley Núm. 105 por el mero hecho de tener derecho, en adición, a recibir una pensión del Seguro Social Federal. Un análisis cuidadoso de la decisión emitida en *García Martínez v. Registrador*, ante, a nuestro juicio demuestra que los fundamentos que tuvo este Tribunal para negarse a seguir la clara letra de la disposición legal allí bajo consideración lo fue que el participante, y único causante de los beneficiarios, *había hecho aportaciones a ambos sistemas* y, por lo tanto, se entendía que había "comprado" el derecho a recibir por separado los beneficios que proveían los dos (2) sistemas.

En los recursos hoy ante nuestra consideración, la situación es aún más dramática. Mientras que en el caso de *García Martínez v. Registrador*, ante, se trataba *de un sólo participante* que había contribuido a dos (2) sistemas de retiro, en los casos de epígrafe se trata *de dos (2) participantes separados* que durante los años de servicios que cada uno le rindió al Gobierno hicieron aportaciones, *por separado*, al Sistema de Retiro. Estas aportaciones se hicieron en forma completa por ellos; esto es, sin que se le hubiera hecho descuento o concesión alguna por el hecho de estar casados entre sí. Repetimos, cada policía aportó mensualmente a su fondo de retiro mientras cada esposa igualmente aportó al suyo conforme requerido por la ley aplicable a cada uno de ellos. Existen, por tanto, dos (2)

derechos distintos y legítimos al recibo de beneficios, independientemente del hecho de que ambos surjan bajo la mencionada Ley Núm. 447; derechos que, en nuestra opinión, no pueden ser usurpados ni confiscados a base de una interpretación restrictiva de la ley por coincidir en una sola persona, en un momento determinado, la condición de participante y viuda.(6)

## V

Pero, *hay más*. A nuestro juicio, la interpretación que de la letra de las leyes aquí en controversia hizo la Administración de los Sistemas de Retiro —interpretación que suscribe y endosa el Procurador General de Puerto Rico— *es una errónea*. Nos explicamos.

A. Ciertamente las Leyes Núms. 127, 169 y 447, ante, establecen una *prohibición expresa* en contra de que un empleado público reciba dos (2) o más pensiones a la misma vez. Así, "[l]as pensiones por incapacidad y beneficios por muerte que conced[e la Ley Núm. 127] *serán incompatibles* con cualesquiera otros beneficios por defunción o pensión que provean los fondos de pensiones en vigor ... para los empleados del Gobierno de Puerto Rico ...". (Énfasis suplido.) 25 L.P.R.A. sec. 384. De igual forma, "[t]odo participante a quien se concediere, mediante legislación especial, una pensión o anualidad ... *perderá* todos sus derechos a retiro ... al amparo de [la Ley Núm. 447] ...". (Énfasis suplido.) 3 L.P.R.A. sec. 774. Y, finalmente, el

---

(6) No emitimos criterio alguno, por no haberse planteado ni requerirlo la justa solución de los recursos ante nuestra consideración, respecto a la constitucionalidad de los estatutos en controversia. La interpretación que de dichos estatutos propone el Procurador General, sin embargo, es una un tanto preocupante. La misma puede desembocar en una situación de confiscación para la cual la Legislatura no tiene facultad constitucional; podría constituir, en adición, la delegación en un órgano administrativo de la facultad para resolver derechos en una forma que puede resultar igualmente confiscatoria. *Hernández Montero v. Cuevas, Director*, 88 D.P.R. 785, 808 (1963).

"derecho bajo cualesquiera leyes vigentes a una pensión [distinta] a la [dispuesta en la Ley Núm. 169 provocará que se pague] la pensión que resulte ser mayor". 25 L.P.R.A. sec. 399.

Ante estas disposiciones, la interrogante a esclarecer en este caso consiste en determinar si el que una persona reciba los beneficios de su pensión por retiro, impide el cobro de los beneficios que esa misma persona puede, *bajo otra ley*, percibir como viudo(a) de un participante del Sistema de Retiro del Estado Libre Asociado. En otras palabras, procede que nos preguntemos: (1) bajo la Ley Núm. 127, ante, ¿son "incompatibles" ambos beneficios?; (2) al amparo de la Ley Núm. 447, ante, ¿la aceptación de uno de ellos significa que se "pierde" el otro?, y (3) de acuerdo al Art. 11 de la Ley Núm. 169, ante, ¿procede tan sólo "la pensión que resulte mayor"? *A nuestro modo de ver las cosas, no.*

B. Como expresáramos anteriormente, la Ley Núm. 447, ante, crea el esquema básico y general del "Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades". Sus disposiciones fueron estatuidas, "para [beneficio de] los miembros del Cuerpo de la Policía de Puerto Rico, los funcionarios y empleados del Gobierno de Puerto Rico, los Jueces de Paz de Puerto Rico, los miembros y empleados de la Asamblea Legislativa, los funcionarios y empleados de empresas públicas, los funcionarios y empleados de los municipios ...". Art. 1 (3 L.P.R.A. sec. 761). Varias secciones de la ley reglamentan, de modo comprensivo, lo relacionado con la matrícula (3 L.P.R.A. sec. 764); la aportación de los miembros participantes (3 L.P.R.A. sec. 780); las reglas que regirán las anualidades por retiro (3 L.P.R.A. sec. 766), incapacidad ocupacional y no ocupacional (3 L.P.R.A. secs. 769–771); la edad de retiro obligatorio —incluso la de los miembros del Cuerpo de Policía (3 L.P.R.A. sec. 824)— y la pensión que recibirán el viudo o los hijos después de fallecido un miembro del sistema (3 L.P.R.A. sec. 788a).

En vista de consideraciones particulares, el legislador también aprobó *leyes especiales* para establecer los beneficios que se concederían a *ciertos grupos* de servidores públicos o sus familiares por razón de retiro, incapacitación o muerte. Esta, precisamente, es la situación de las Leyes Núms. 127 y 169, ante, que hoy consideramos. La primera de ellas, esto es, la Ley Núm. 127, recompensa el celo, el arrojo, la lealtad y la determinación con que la fuerza policíaca, *inter alia*, despliega su tarea de protección en busca del bien colectivo. En reconocimiento a esta labor, el policía que se incapacita mental o físicamente en el cumplimiento de su deber tendrá derecho a una pensión que "será igual al tipo de retribución que estuviere recibiendo a la fecha de separación", o sea, el cien por ciento (100%) de su salario. 25 L.P.R.A. sec. 378. Si le sobreviniere la muerte bajo las circunstancias descritas, la pensión se pagará, entonces, a sus beneficiarios (la viuda y los hijos, 25 L.P.R.A. sec. 376) por igual suma de dinero, sujeto a lo provisto luego en el Art. 5 (25 L.P.R.A. sec. 380). *Por su parte*, la Ley Núm. 169, ante, concede una pensión a los beneficiarios o herederos de los miembros del Cuerpo de la Policía que mueren mientras reciben su pensión. Cuando éste fallece, la Ley Núm. 169 —al reconocer, de nuevo, la importancia de su labor— permite que los "beneficiarios designados por él a tales efectos, o sus herederos, incluyendo el cónyuge supérstite", 25 L.P.R.A. sec. 391, reciban el sesenta por ciento (60%) de la pensión que en vida recibía el policía, 25 L.P.R.A. sec. 392.

Ahora bien, de la estructura, de los términos y de la relación que guardan entre sí las Leyes Núms. 127, 169 y 447, ante, surge que al diseñar un plan de pensión por incapacidad y retiro para los empleados del Estado y sus familiares, *el legislador quiso vedar, únicamente, el recibo de más de una pensión por la misma capacidad o concepto; es decir, quiso impedir: "doble pensión" como "participante" y/o "doble pensión" como "beneficiario".*

Bastan unos ejemplos, a manera de ilustración, para aclarar este punto. Conforme a los Art. 6 y 6-A de la Ley Núm. 447, ante, 3 L.P.R.A. sec. 766, "[l]os miembros del Cuerpo de la Policía ... tendrán ... la opción de acogerse a una anualidad por retiro a partir de la fecha en que cumplan cincuenta (50) años de edad y hubieren completado por los menos veinticinco (25) años de servicios acreditables". Supongamos, a los fines de ilustración, que un policía llega a la edad de cincuenta y dos (52) años y cuenta con más de veinticinco (25) años de servicio. Esta situación de por sí lo haría acreedor a una anualidad por retiro a base de la antes mencionada disposición. Antes de acogerse a ella, sin embargo, y durante el desempeño y cumplimiento de sus deberes, dicho policía sufre un accidente que lo incapacita y lo obliga a separarse del servicio. En consecuencia, pide y le es concedida una pensión por incapacidad bajo la Ley Núm. 127, ante, que como vimos es "igual al tipo de retribución que est[aba] recibiendo a la fecha de separación". 25 L.P.R.A. sec. 378. Posteriormente, como "participante" del Sistema de Retiro, solicita, además, la concesión de una anualidad de retiro por mérito debido a que cumplió con los requisitos dispuestos en la Ley Núm. 447 (3 L.P.R.A. sec. 766), esto es, tener más de cincuenta (50) años, que incluyen veinticinco (25) de "servicio acreditable" en la fuerza policíaca. *En esta situación, sin duda, el otorgamiento de esta segunda pensión constituiría claramente un caso de "doble pensión" prohibido por nuestro ordenamiento.* Ello así porque cada pensión recae *sobre una misma persona exclusivamente en su carácter de participante.* De ahí que el legislador dispusiera que:

> Todo *participante* a quien se concediere, mediante legislación especial, una pensión o anualidad, no obstante cualquier otra disposición de las secs. 761 *et seq.* de este título en contrario, perderá todos sus derechos a retiro y otros beneficios concedidos al amparo de las secs. 761 *et seq.* de este título; y perderá, además, todo derecho al rembolso de sus aportaciones al Sistema. Art. 14 de la Ley Núm. 447, ante.

En el mismo ejemplo, si el policía falleciese recibiendo los beneficios de una pensión por incapacidad bajo la Ley Núm. 127, ante, sus beneficiarios tendrían derecho a recibir la totalidad de la anualidad por él percibida. En adición, *teóricamente* podrían también reclamar los beneficios por muerte concedidos al amparo de la Ley Núm. 105, ante, 3 L.P.R.A. sec. 788a(a). Pero como ambos serían *por concepto de beneficiarios*, el legislador dispuso, respectivamente, en las Leyes Núms. 105 y 127 que:

> (h) En el caso [de] que [el cónyuge supérstite] tuviese derecho bajo cualquiera de las leyes vigentes a una pensión mayor que a la aquí dispuesta por motivo del fallecimiento de dicho participante, *se pagará la pensión que resulte mayor.* (Énfasis suplido.) 3. L.P.R.A. sec. 788a(h).

y:

> L[o]s ... beneficios por muerte que conceden las secs. 376 a 387 de este título *serán incompatibles* con cualesquiera otros beneficios por defunción ... que provean los fondos de pensiones en vigor, o que en el futuro se crearen, para los empleados del Gobierno de Puerto Rico, y con cualesquiera beneficios similares provistos por ley con cargo a fondos públicos. (Énfasis suplido.) 25 L.P.R.A. sec. 384.

Ahora bien, *distinta es la situación en los casos ante nuestra consideración.* En ninguno de los recursos ante nos existe una doble pensión, *sino dos (2) pensiones distintas tanto en su origen como en la capacidad y concepto en que se reciben.*

Todas las viudas aquí recurrentes tenían un derecho asegurado al recibo de una pensión por años de servicio o por incapacidad, según fuese el caso. La pensión les pertenecía, *por derecho propio*, por haberla ganado y pagado siendo *participantes* del Sistema de Retiro. Por otro lado, las recurridas también tenían el derecho a recibir unos beneficios *por concepto de viudez*, beneficios a los que eran acreedoras independientemente de recibir una pensión

propia. *Ninguna de las leyes aquí analizadas prohíbe el recibo simultáneo de estas pensiones, ya que no existe correlación ni conflicto entre lo que persigue y dicta cada una para las personas a quienes beneficia. Cualquier otra conclusión sería absurda y contraria a una interpretación liberal como la que requieren estos estatutos.*

## VI

Terminamos, recordando las expresiones que hiciéramos en *Rosa Resto v. Rodríguez Solís*, 111 D.P.R. 89, 92 (1981), a los efectos de que "[e]l derecho a pensión de retiro por años de servicio del empleado público tiene un respetable contenido ético y moral y constituye un seguro de dignidad para el hombre o la mujer que habiendo dedicado al servicio público sus años fecundos, no debe encontrarse en la etapa final de su vida en el desamparo, o convertido en carga de parientes o del Estado. *Román Mayol v. Tribunal Superior*, 101 D.P.R. 807, 811 (1973)". Una vez un empleado del Gobierno se ha retirado, su pensión no está sujeta a cambios o menoscabos, ya que los participantes del Sistema de Retiro del Gobierno tienen un *derecho adquirido de naturaleza contractual* que surge con el ingreso del empleado al Sistema, independientemente de que su participación sea voluntaria o compulsoria. *Bayrón Toro v. Serra*, 119 D.P.R. 605, 618 (1987). Entre el Estado y el empleado hay un *acuerdo de voluntades* que produce un *efecto jurídico vinculante* para ambas partes. *Bayrón Toro v. Serra*, ante. Ello, lógicamente, hace que el plan de retiro bajo las disposiciones de la citada Ley Núm. 447 sea parte de ese contrato. La Asamblea Legislativa no tiene facultad para menoscabar ese derecho adquirido de naturaleza contractual, o que ha sido "comprado", por ese participante mediante aportaciones compulsorias provenientes de su salario.

■ Por último, no hay duda que la interpretación que de un estatuto hace la agencia administrativa encargada de su cumplimiento merece, de ordinario, deferencia. *A.R.P.e. v. Ozores Pérez*, 116 D.P.R. 816, 821 (1986); *M & V Orthodontics v. Negdo. Seg. Empleo*, 115 D.P.R. 183 (1984). Ahora bien, cuando la interpretación que del estatuto hace la agencia administrativa produce resultados inconsistentes con, o contrarios al, propósito de la ley o lleva a la comisión de injusticias, el criterio administrativo no puede prevalecer. Debido a ello es que los tribunales, como últimos intérpretes de la ley, están autorizados para revisar las decisiones administrativas y, si necesario, revocarlas.

Por los fundamentos antes expresados, *se dictará sentencia confirmatoria de la emitida en los recursos de epígrafe por el Tribunal Superior de Puerto Rico, Sala de San Juan.*

La Juez Asociada Señora Naveira de Rodón concu-rrió con el resultado sin opinión escrita.