Voto particular disidente emitido por el
Juez Asociado Se-ñor Estrella Martínez,
al cual se unen la Jueza Asociada Señora Pabón Charneco y los Jueces Asociados Señores Kolthoff Caraballo y Rivera García.
Desde los inicios de la vigencia de la Constitución, que todos los Jueces y Juezas de este Tribunal juramos defender, los pensionados han confiado en el entendimiento cer-tero de que “[c]on el advenimiento de las democracias po-pulares y la desaparición de los regímenes monárquicos, el fundamento jurídico de la pensión no lo constituye un acto de recompensa del soberano, sino una obligación moral del estado”. (Énfasis suplido). Rivera v. Rodríguez, 93 DPR 21, 24 (1966).
Uno de los principios claves en una verdadera democra-cia es la existencia de mecanismos para que sus ciudada-nos tengan acceso al reclamo de sus derechos, indepen-dientemente de que constituyan una mayoría o minoría cuantitativa. Lamentablemente, cinco compañeros y com-pañeras de este Tribunal nuevamente han optado por no ejercer su rol en la protección de los derechos constitucio-nales de ciudadanos afectados por la Ley Núm. 3-2013. Tristemente, ahora en nuestra democracia las pensiones por retiro del servicio público han sido degradadas a una mera gracia del Estado. Peor aún, ha quedado en el olvido el reconocimiento reiterado de que la pensión de un jubi-lado no está sujeta a cambios o menoscabos.
*105 Por considerar que las pensiones trastocadas poseen una protección absoluta, a la luz de la cláusula en contra del menoscabo de las obligaciones contractuales, y que la Ley Núm. 3-2013 menoscaba los derechos adquiridos de los pensionados, respetuosamente disiento.
I
El 24 de junio de 2013, un grupo de ex empleados públi-cos acogidos al retiro presentaron ante esta Curia un re-curso de certificación, en el cual solicitaron que se declare inconstitucional la Ley Núm. 3-2013 por esta incidir adver-samente sobre sus derechos adquiridos al disfrute de un aguinaldo de Navidad, un bono de verano y un aumento periódico de sus pensiones, según estos beneficios le fueron reconocidos en la Ley Núm. 447 de 15 de mayo de 1951 (3 LPRA see. 761 et seq.), al igual que en otras leyes especiales.
En sus recursos, los peticionarios invocan la See. 7 del Art. II de la Constitución de Puerto Rico, LPRA Tomo 1, la cual impide que el Estado promulgue leyes que menosca-ben relaciones contractuales, incluyendo las que su natu-raleza es pública. A su vez, descansan en el Art. 3 del Có-digo Civil de Puerto Rico, 31 LPRA see. 3, para argüir que los beneficios que le fueron reconocidos, por virtud de dife-rentes leyes especiales, son derechos adquiridos que no pueden ser afectados retroactivamente.
Teniendo presente que los peticionarios que acuden ante nos son empleados retirados, quienes ya eran acreedores de los beneficios de retiro que la Ley Núm. 3-2013 pretende privarles, pasemos a repasar el marco jurídico aplicable.
II
Este Tribunal ha establecido con meridiana claridad que los empleados públicos que ya se han acogido al retiro *106 poseen un derecho adquirido de carácter absoluto sobre los beneficios de jubilación que le han sido reconocidos. A esos efectos, hemos pautado que la pensión de estos individuos no “está sujeta a cambios o menoscabos”, ya que tales be-neficios son un “derecho adquirido de naturaleza contractual”.(1) Bayrón Toro v. Serra, 119 DPR 605, 618 (1987). Véanse, también: Rodríguez v. Retiro, 159 DPR 467, 474 y 477 (2003); Calderón v. Adm. Sistemas de Retiro, 129 DPR 1020, 1032 (1992).
Es por ello que todo perjuicio legislativamente infundido a los beneficios de retiro de un pensionado es improcedente, de cara a la protección constitucional instaurada por la See. 7 del Art. II de la Constitución de Puerto Rico, supra, la cual impide el menoscabo de relaciones contractuales, incluyendo los contratos de retiro pactados entre el Estado y el empleado pensionado. Art. II, Sec. 7 de la Constitución de Puerto Rico, supra. Véase, también, Bayrón Toro v. Serra, supra, pág. 607.
En aras de aplicar la prohibición constitucional esbo-zada urge plantearnos, como punto de partida, cuáles son *107 los componentes de la pensión de retiro sobre la que un pensionado ostenta un derecho adquirido de carácter contractual. A esos efectos, es imperativo examinar el Art. 1-101 de la Ley Núm. 447 (3 LPRA see. 761), el cual des-glosa tales elementos. Veamos.
Desde la primera línea del Art. 1-101 de la Ley Núm. 447, supra, el legislador expresamente reconoció que los beneficios concedidos por ley son parte integral del importe que recibirán los retirados. Específicamente, estableció lo siguiente: “se crea un sistema de retiro y beneficios que se denominará ‘Sistema de Retiro de los Empleados del Go-bierno del Estado Libre Asociado de Puerto Rico’ el cual se considerará un fideicomiso”. (Énfasis suplido).
El Art. 1-101 de la Ley Núm. 447, supra, dispone que el sistema de retiro de Puerto Rico existe para el “provecho de los miembros participantes de su matrícula, sus depen-dientes y beneficiarios, para el pago de anualidades por retiro y por incapacidad, anualidades y beneficios por de-función y otros beneficios [...]”.(2) (Énfasis suplido). De tal manera, podemos concluir que la pensión garantizada a los empleados retirados, incluye los componentes siguientes: (1) el pago de una anualidad por retiro; (2) el pago de una anualidad por incapacidad, de ser aplicable; (3) el pago de una anualidad, al igual que otros beneficios, por motivo de la muerte; y (4) cualquier otro beneficio cuyo pago deba sufragarse del fideicomiso para el sistema de retiro, aunque sea conferido por virtud de una ley especial.
A la luz de lo anterior, el Estado está obligado a respetar el pago de las partidas mencionadas, en función de la cláu-sula constitucional en contra del menoscabo de las obliga-ciones contractuales, sin importar que alguna de ellas- sea conferida por virtud de una ley especial. Lo anterior res-ponde a nuestros pronunciamientos jurisprudenciales, en los cuales hemos establecido que la referida garan- *108 tía protege los “términos o condiciones esenciales del contrato que principalmente dieron motivo a la celebración de éste de modo que [no] se frustren las expectativas de las partes”. (Énfasis suplido). Domínguez Castro et al. v. ELA I, 178 DPR 1, 83 (2010). En iguales términos, así lo requiere el Art. 3 del Código Civil de Puerto Rico, el cual dispone que cuando una ley tenga efecto retroactivo, esta no podrá “perjudicar los derechos adquiridos al amparo de una legislación anterior”. 31 LPRA sec. 3; Hernández, Romero v. Pol. de P.R., 177 DPR 121, 146-148 (2009).
Una vez queda establecido que se ha menoscabado al-gún componente de la pensión de un retirado, según lo he-mos detallado, huelga hablar de la intensidad del menoscabo. Ello, en función de lo que hemos reiterado a lo largo de esta opinión: que el Estado no está legitimado a afectar, de forma alguna, el derecho adquirido de un em-pleado jubilado sobre sus beneficios de retiro, por virtud de la cláusula constitucional bajo examen, nuestros pronun-ciamientos jurisprudenciales y el Art. 3 del Código Civil, supra.
Habiendo repasado estos principios constitucionales, pasemos a reseñar cómo la Ley Núm. 3-2013 priva a los empleados públicos ya retirados de ciertos derechos adquiridos.
III
Consciente de la realidad jurídica explicada, de que la pensión de un retirado es intocable, la See. 29 de la Ley Núm. 3-2013 contiene la denominada “Preservación de Beneficios”. Según este acápite, la Ley Núm. 3-2013 ex-pone que los “beneficios bajo esta Ley de los participantes del Sistema que se pensionaron en o antes del 30 de junio de 2013, no serán modificados, incluyendo los beneficios que reciben o recibirían sus beneficiarios en caso de muerte”. (Énfasis suplido). Sin embargo, una lectura de la *109 referida Ley Núm. 3-2013 demuestra lo contrario. Abundemos.
Antes de la aprobación de la Ley Núm. 3-2013, los pen-sionados recibían beneficios adicionales que, entre otros, incluían un aumento trienal, un aguinaldo de navidad as-cendente a $600 y un bono de verano de $100. La aproba-ción de la Ley Núm. 3-2013 despojó de un plumazo a los pensionados del aumento trienal, del bono de verano y re-dujo el bono de navidad de $600 a solo $200.
Los empleados públicos que se acogieron al retiro por virtud de la Ley Núm. 447, supra, y la Ley Núm. 1 de 16 de febrero de 1990 (3 LPRA sec. 766b et seq.) gozaban, desde el 1 de enero de 1992, del derecho a que sus anualidades por años de servicio, edad o incapacidad, fuesen aumentadas en un 3% cada tres años. Art. 2-104 de la Ley Núm. 447 (3 LPRA sec. 766e). El Estado catalogó este derecho como una “obligación moral de ayudar a mejorar la condi-ción de vida de lo (a)s pensionado (a)s, personas que dieron lo mejor de su vida en el servicio del Pueblo de Puerto Rico”. Exposición de Motivos de la Ley Núm. 35-2007. Ade-más, el referido aumento existía con el fin de palear la disminución relativa del valor de las anualidades de los pensionados, por causa del aumento en el costo de vida impuesto por el transcurso del tiempo. Íd.
Desde 1992, la Asamblea Legislativa proveyó diferentes legislaciones conducentes a ese fin, siendo el último aumento trienal aquel conferido el 24 de abril de 2007, por virtud de la Ley Núm. 35-2007 (3 LPRA secs. 766 y 766d). Véanse: Ley Núm. 157-2003 (3 LPRA sec. 761 n.); Ley Núm. 10-1992 (3 LPRA sec. 761 et seq.). Véase, también, Puerto Rico Government Employee’s Retirement System, Actuarial Valuation Report, 30 de junio de 2011, pág. 57.
El Art. 2-113 de la Ley Núm. 447 reconoce que el beneficio del aumento trienal es parte inherente al fideicomiso de retiro. 3 LPRA sec. 775. Según lo disponía el Art. 2-104 de la Ley Núm. 447, el pago del aumento trienal *110 quedó sujeto a que el actuario del sistema de retiro emi-tiera una recomendación favorable a esos efectos y que se identificaran los fondos para su pago por vía de legislación. 3 LPRA sec. 766e. De tal manera, solo ante la falta de recomendación del actuario es que se reconoce la posibili-dad de privar temporeramente a los pensionados de este beneficio. Ello, sin necesidad de que se derogue en su tota-lidad tal derecho adquirido, el cual forma parte del fideico-miso y, a su vez, constituye un componente de la pensión. Ahora bien, una vez el actuario reconoce como un pasivo el pago del aumento trienal, y en ausencia de legislación para proveer el pago de esa obligación, el Sistema de Retiro de-berá sufragar este beneficio con cargo al fideicomiso. Ello, porque el derecho al referido aumento está engranado en la Ley Núm. 447 como un beneficio a sufragarse y una obligación del fondo de retiro. íd.
A esos efectos, el último informe del actuario del sis-tema del fondo de retiro emitido el 30 de junio de 2011, asumió que los beneficios conferidos por virtud del au-mento trienal serían otorgados a los pensionados. Véase Actuarial Valuation Report, supra, págs. 37 y 84. A pesar de que el informe del actuario provee para el pago de estos beneficios, la Sec. 6 de la Ley Núm. 3-2013 eliminó por completo el Art. 2-104, desechando, a su vez, el derecho de todo pensionado al pago del aumento trienal. Véase la Sec. 6 de la Ley Núm. 3-2013.
Como si fuera poco, el pensionado tampoco gozará del beneficio de un aguinaldo de Navidad con el cual ha con-tado desde la vigencia de la Ley Núm. 98 de 4 de junio de 1980. El dinero para sufragar el aguinaldo de Navidad pro-venía de los fondos del fideicomiso del Sistema de Retiro en el caso de los pensionados o beneficiarios acogidos a la Ley Núm. 447, según enmendada. 3 LPRA see. 761 n. Este be-neficio, que formaba parte de la pensión del retirado, res-pondió a un aumento programático para asegurarle un *111 “agradable porvenir una vez abandona [ban] el servicio pú-blico y se acog[ían] a un merecido retiro”. Exposición de Motivos de la Ley Núm. 144-2005. El último incremento fijó el aguinaldo de navidad en $600. 3 LPRA see. 761 n. A pesar de que la Ley Núm. 3-2013 enunció que no se modi-ficarían los beneficios de los pensionados, ello no fue así, ya que ésta redujo el aguinaldo de Navidad en $400. Por lo tanto, con la aprobación de la referida legislación, el jubi-lado tan solo contará con $200 como pago de su aguinaldo de navidad.
Para empeorar el cuadro de modificaciones drásticas del pacto suscrito con los pensionados del Sistema de Retiro, estos tampoco disfrutarán del bono de verano, con el cual contaban desde hace más de una década. Con el fin de incrementar los “beneficios existentes” a los pensionados, la Ley Núm. 37-2001 (3 LPRA sec. 757g) les reconoció un derecho a recibir un bono de verano de $100 —exento de contribuciones— que será pagado antes de 15 de julio de cada año. La See. 33 de la Ley Núm. 3-2013 enmendó el Art. 1 de la Ley Núm. 37-2001, a los fines de excluir de este beneficio a los pensionados cobijados por la Ley Núm. 447, según enmendada, a los acreedores de pensiones de los sis-temas sobreseídos por esta ley, o a los administrados por la Administración de los Sistemas de Retiro que hoy acuden ante esta Curia.(3)
En consecuencia, el retirado no contará con un aumento trienal, un Bono de Verano y se le reduce su aguinaldo de navidad a la ínfima cantidad de $200. A la luz de estas consideraciones, pasemos a disponer de la controversia pendiente ante nuestra consideración.
*112 IV
En el caso de autos, los retirados que, al 30 de junio de 2013, ya gozaban de los beneficios provistos por el sistema de retiro público, acuden ante esta Curia para solicitar que se declare la inconstitucionalidad de la Ley Núm. 3-2013, por ésta violentar la cláusula constitucional en contra del menoscabo de las relaciones contractuales. Al igual que los peticionarios desamparados por este Tribunal en Trinidad Hernández et al. v. ELA et al., 188 DPR 828 (2013), los pensionados del caso de epígrafe cuentan con el aval indis-cutible de la Justicia y del Derecho. Ahora bien, los pensio-nados poseen una protección mayor reforzada por los pro-nunciamientos de este Tribunal, según lo expusimos a la saciedad en nuestra exposición del Derecho.
Un pensionado posee un derecho absoluto, intocable e incontestable a que su pensión no sea trastocada de forma alguna por los actos legislativos del soberano. Nuestra ju-risprudencia ha establecido palmariamente que los benefi-cios de pensión, conferidos por el fideicomiso del fondo del retiro, son derechos adquiridos en su naturaleza, los cuales no pueden ser menoscabados por el Estado, una vez un empleado se acoge a la jubilación.
Cónsono con lo anterior, y debido a que la pensión de un retirado está compuesta por su anualidad de retiro y por los otros beneficios que le sean reconocidos por ley,(4) cuyo pago provenga del fideicomiso del sistema de retiro, un em-pleado posee un derecho adquirido a todos los beneficios que le sean reconocidos por leyes especiales, especialmente *113 cuando estos sean sufragados por el fideicomiso del sis-tema de retiro.
En el caso de autos, la Ley Núm. 3-2013 ha eliminado por completo el aumento trienal de los ex empleados públi-cos que ya se acogieron al retiro. Ello, a pesar de que tales beneficios deberían ser sufragados por los fondos del sis-tema de retiro, en ausencia de una fuente de financiamiento y que, como resultado, constituyen una parte esencial de su pensión.
Tal proceder es inaceptable de cara a la protección cons-titucional en contra del menoscabo de las relaciones con-tractuales, la cual prohíbe que se menoscabe la pensión de un retirado, de forma alguna. A su vez, esta legislación contraviene el Art. 3 de nuestro Código Civil, supra, el cual impide que una legislación con efectos retroactivos prive a nuestros ciudadanos de sus derechos adquiridos.
Sin importar que la Constitución y nuestro ordena-miento legal vedan notoriamente el atropello configurado en la Ley Núm. 3-2013, una mayoría de esta Curia ha ig-norado los pronunciamientos contundentes que en el pa-sado hemos promulgado, optando en su lugar por rechazar las pautas de nuestra Constitución. Al así obrar, cinco Jue-ces de este Foro vuelven a maniatar los reclamos de miles de pensionados quienes, asistidos diáfanamente por la ver-dad inconmovible del Derecho y la Justicia, han acudido ante nos a reclamar lo que por Ley les corresponde.
Al igual que en Trinidad Hernández et al. v. ELA et al., supra, nuevamente este Tribunal niega a los peticionarios sus derechos constitucionales a los beneficios de retiro que les correspondían, claudicando así a su función adjudica-tiva y validando injustamente una Ley que contraviene, a todas luces, las protecciones fundamentales de nuestra Ley Suprema.
Una mayoría de este Tribunal interpreta erróneamente que la pensión se reduce meramente a una anualidad por retiro. Con ello, ignoran que la Ley Núm. 447 creó y reco- *114 noció desde sus inicios un sistema de retiro y beneficios. No meramente un sistema de retiro. Una vez reconocidos esos derechos desde la creación del sistema, no podemos avalar la acción de la mayoría que persigue reducir la Ley Núm. 447 a un mero “pago de una anualidad de retiro”, cuando el legislador creó un “sistema de retiro y beneficios”. Sencilla-mente procedía revocar al Tribunal de Primera Instancia, en lugar de declarar “no ha lugar” la petición de los pensionados.
Como resultado, hoy este Tribunal participa activa-mente en la privación de los beneficios que le fueron garan-tizados por el Estado a nuestros pensionados. Los jueces que hoy avalan la validez de la ilícita Ley Núm. 3-2013, olvidan que los tribunales representan el último garante de las protecciones inherentes a una democracia constitu-cional. Si renunciamos tan fácilmente a nuestra responsa-bilidad como guardianes finales de las exigencias de la Constitución, ¿cómo habrá de prosperar la justicia? La res-puesta a esta interrogante, compañeros, ha quedado entur-biada y ensombrecida por la resolución que hoy aprueba una mayoría de este Tribunal. Por ello, disiento.
V
Por entender que la decisión de una mayoría de este Tribunal viola los derechos de nuestros pensionados al amparo de la See. 7 del Art. II de nuestra Constitución, supra, hubiese expedido el recurso de epígrafe, revocado al Tribunal de Primera Instancia y declarado inconstitucional aquellas provisiones de la Ley Núm. 3-2013 que lesionan los derechos adquiridos de nuestros retirados.

 En la parte II de la opinión disidente que emití en el caso Trinidad Hernández et al. v. ELA et al., 188 DPR 828, 898 (2013), discuto extensamente los elementos requeridos para todo análisis al amparo de la cláusula constitucional contra el menoscabo de las relaciones contractuales. Véase la opinión disidente del Juez Asociado Señor Estrella Martínez, págs. 899-912. En aquella ocasión, citando a Bayrón Toro v. Serra, 119 DPR 605 (1987), expuse que en nuestra jurisdicción, distinto a otras, el sistema de retiro público es considerado un contrato público sujeto a la Sec. 7 del Art. II de la Constitución de Puerto Rico. Íd., págs. 907-908. De tal manera, queda satisfecho el primer criterio requerido por el Tribunal Supremo federal en General Motors Corp. v. Romein, 503 US 181, 186 (1992), al momento de analizar una alegada violación de la cláusula constitucional en contra del menoscabo de relaciones contractuales, el cual exige determinar, como cuestión de umbral, si existe una relación contractual.
Los restantes criterios del Tribunal Supremo federal, según fueron esbozados en General Motors Corp. v. Romein, supra, a saber: que una legislación menoscabe la relación contractual, y que el menoscabo indicado sea sustantivo en su naturaleza también están presentes en el caso de autos. En primer lugar, y según lo establece-remos más adelante, la Ley Núm. 3-2013 menoscaba la relación contractual pactada entre los empleados públicos y el Estado al afectar el sistema de retiro público. En segundo plano, de establecerse que el plan de pensión de los empleados retirados ha sido menoscabado, tal menoscabo, sin importar su grado de intensidad, ya es consi-derado como sustancial en su naturaleza y prohibido por la cláusula constitucional bajo examen.

 Amerita resaltar que la Sec. 1 de la Ley Núm. 3-2013 no enmendó el referido articulado.

 Hoy la Ley Núm. 3-2013 únicamente reconoce el bono de Verano a los pen-sionados bajo la Ley de Retiro de la Judicatura, Ley Núm. 12 de 19 de octubre de 1954, según enmendada, 4 LPRA see. 233 et seq., según enmendada.

 Como bien establecimos anteriormente, la pensión de un retirado está compuesta por los beneficios reconocidos en el Art. 1-101 de la Ley Núm. 447. Contrario a lo propuesto en la resolución mayoritaria, el Art. 2-101 de la Ley Núm. 447, supra, se circunscribe a establecer cómo habrá de computarse la anualidad de retiro. De tal manera, una mayoría de este Tribunal limita erradamente el alcance del sistema de retiro y beneficios creados por esta ley a una mera anualidad de retiro. Tal ejercicio interpretativo viola el principio básico de hermenéutica que exige que las diferentes secciones de una ley no se interpreten aisladamente, sino íntegramente, las unas con las otras. Warner Lambert Co. v. Tribunal Superior, 101 DPR 378, 386 (1973).