# 2003 DTA 99

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL III DE ARECIBO/UTUADO**

MYRNA NIEVES MUÑOZ
Recurrente

v.

ADMINISTRACION DE LOS SISTEMAS DE RETIRO DE LOS
EMPLEADOS DEL GOBIERNO Y LA JUDICATURA
Recurrida

Núm. KLRA-2003-00061

San Juan, Puerto Rico, a 10 de junio de 2003

Panel integrado por su Presidente, el Juez Soler Aquino,
y los Jueces Colón Birriel y Escribano Medina

Escribano Medina, Juez Ponente

**TEXTO COMPLETO DE LA RESOLUCION**

La recurrente, Myrna Nieves Muñoz, nos solicita la revocación de la resolución emitida el 21 de noviembre de 2002 por la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura, en adelante la Junta. Dicho foro confirmó la determinación emitida el 24 de enero de 1995 por la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura, en adelante la Administración, la cual había denegado la solicitud de pensión por Incapacidad Ocupacional.

# I

Según surge de los autos, mientras la recurrente laboraba como Auxiliar de Salud del Departamento de Educación en el Distrito Escolar de Hatillo sufrió una serie de accidentes que le produjeron unas condiciones médicas que mermaron sus capacidades fisiológicas generales. ▮

Luego de haber sufrido un quinto accidente en su trabajo (inhalación de gases que le provocó un asma bronquial y una condición emocional secundaria; o sea, depresión mayor severa recurrente), la recurrente acudió al Fondo del Seguro del Estado, en adelante el FSE. El 22 de agosto de 1997, el FSE le diagnosticó una Incapacidad Ocupacional Total Permanente (Asma Bronquial y Depresión Mayor con Ansiedad). Véase la página 241 del Apéndice del Recurso de Revisión.

Solicitada la reapertura ▮ del caso ante la Junta, ésta ordenó la devolución del caso al nivel de la Administración para que evaluara la nueva evidencia presentada por la recurrente. Luego de la celebración de una vista evidenciaria, dicho foro determinó que:

*"Luego de reevaluar minuciosamente toda la evidencia médica que consta en nuestro poder, nos vemos precisados a reafirmarnos en la denegatoria de su reclamación."* Véase la página 282 del Apéndice del Recurso de Revisión.

Así las cosas, el 14 de noviembre de 2000, la recurrente apeló dicha determinación a la Junta. ▮ Luego de ciertos trámites procesales, el 21 de noviembre de 2002, la Junta llegó a la siguiente determinación:

*"Luego de un análisis serio de toda la evidencia presentada, debemos concluir que las condiciones reconocidas por el Fondo del Seguro del Estado que padece de la apelante no la incapacitan para el servicio público; inclusive, de los informes médicos se establece un cuadro de una persona con sus enfermedades, pero que funciona dentro de los límites de poder llevar alguna actividad laboral que pueda generar una remuneración económica. Puede explicar muy bien sus circunstancias personales y médicas a los distintos especialistas y solamente en cuanto a los medicamentos para tratar el asma bronquial, los demás son en dosis bajas y dentro de lo normal que toma una persona que funciona dentro de un marco laboral. Además, los deberes del cargo de la apelante no son en forma alguna inherentemente fuertes, en cuanto hacer fuerzas o estar en lugares contaminantes; al contrario, su trabajo es uno de rutina y que con los debidos acomodos puede realizar sus labores como es archivar, escribir, hacer citas con médicos, y ayudar con los estudiantes para pesarlos, medirlos, coger muestras de sangre, orina y otros."* Véase la página 342 del Apéndice del Recurso de Revisión.

El 20 de diciembre de 2000, la recurrente solicitó la reconsideración de dicha determinación. Alegó que:

*"[e]n el caso de autos, la apelante tiene condiciones orgánicas y emocionales que no le permiten trabajar, y esto es evidenciado por la prueba médica que obra en el expediente, además de su edad, escolaridad y su experiencia de trabajo. Todos estos factores la inhabilitan para realizar el trabajo en el cual se desempeñaba o cualquier otro con igual o menor remuneración."* Véase la página 349 del Apéndice del Recurso de Revisión.

Como la Junta no tomó una determinación dentro del término dispuesto por ley, el 4 de febrero de 2003, la recurrente presentó un recurso de revisión ante este Tribunal de Circuito de Apelaciones. Inconforme, ésta nos presenta los siguientes señalamientos de error:

*"A. Erró la Honorable Junta de Síndicos del Sistema de Retiro en la interpretación que hace de la Ley y el Reglamento, ya que produce resultados inconsistentes con, o contrarios, al propósito de la Ley y lleva a la comisión de una injusticia.*

*B. Erró la Honorable Junta de Síndicos del Sistema de Retiro al hacer las determinaciones de hechos, ya que*

*no se basan en evidencia sustancial que obre en el expediente administrativo, sino que, por el contrario, son totalmente contrarias a la prueba obrante en autos.*

*C. Erró la Honorable Junta de Síndicos del Sistema de Retiro al concluir que el demandante-apelante no está incapacitada y que procede su reinstalación sin dar el peso meritorio a la evidencia médica presentada y obrante en los autos de este caso."*

Luego de examinadas las posiciones de las partes y el derecho aplicable, estamos en condiciones de resolver.

## II

Para logrrar arribar a la solución justiciera de esta controversia es necesario que primero expongamos la normativa jurídica pertinente. La revisión judicial de decisiones administrativas abarca tres (3) áreas, a saber: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hecho, conforme al criterio de la evidencia sustancial, y (3) la revisión completa y absoluta de las conclusiones de derecho. *Reyes Salcedo v. Policía de P.R.,* 143 D.P.R. 85, 93 (1997).

Es principio ampliamente establecido por nuestra jurisprudencia que las conclusiones de hechos de los organismos administrativos especializados merecen gran consideración y respeto por este Tribunal de Circuito de Apelaciones si las mismas están sostenidas por evidencia sustancial. 3 L.P.R.A. sec. 2175; *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.,* 133 D.P.R. 521, 532 (1993). El concepto de evidencia sustancial ha sido definido por el Tribunal Supremo como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 D.P.R. 425, 437 (1997). La evidencia debe ser considerada en su totalidad, incluyendo tanto aquélla que sostenga la decisión administrativa como también la que menoscabe el peso que la agencia le haya conferido. *Id.*

Corresponde así a la parte que impugna la determinación de una agencia administrativa el peso de establecer que la misma se tomó en ausencia de evidencia sustancial. Véase, *Henríquez Soto v. Consejo Educación Superior,* 120 D.P.R. 194, 210 (1987). En igual medida, para alegar que la evidencia en la cual se fundamentaron las determinaciones de hechos de la agencia no es sustancial, la parte afectada deberá demostrar que existe otra prueba en el récord que reduce o menoscaba el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda prudentemente concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. *Misión Ind. P.R. v. J.P.,* 146 D.P.R. 64, 131 (1998).

Las conclusiones de derecho de la agencia, distinto a las determinaciones de hechos, podrán ser revisadas en todos sus aspectos por este foro, sin sujeción a norma o criterio alguno. *Miranda v. C.E.E.,* 141 D.P.R. 775, 787 (1996). Esto no significa, sin embargo, que al ejercer su función revisora, el tribunal descarte libremente las conclusiones e interpretaciones de la agencia. *Id.* Por ello, el Tribunal Supremo ha reiterado en innumerables ocasiones que las determinaciones, conclusiones e interpretaciones incluidas en dichas decisiones-tendrán gran deferencia al ser revisadas por este Tribunal. *Viajes Gallardo v. Clavell,* 131 D.P.R. 275, 289-290 (1992). Esta deferencia responde al reconocimiento de que las agencias administrativas poseen vasta experiencia y conocimiento especializado, siendo éstas instrumentos necesarios para la interpretación de la ley. *Reyes Salcedo v. Policía de P.R., supra,* pág. 94. Sin embargo, dicha deferencia y respeto no significa una renuncia por parte de los tribunales en su función revisora. Por ello, el foro apelativo tendrá facultad para revocar la interpretación administrativa cuando la misma no sea válida por haberse cometido un error en la aplicación del derecho. Véase, *Fuertes y otros v. A.R.PE.,* 134 D.P.R. 947, 953 (1993).

Luego de hacer estos señalamientos generales sobre los contornos de nuestra función revisora, procedemos a analizar los distintos señalamientos de error presentados por la recurrente.

## III

La Ley Número 447 de 15 de mayo de 1951, según enmendada, 3 L.P.R.A. secs. 761 *et seq.*, en adelante la Ley Núm. 447, establece un sistema de retiro y beneficios para los empleados del Gobierno de Puerto Rico. El mismo es un estatuto remedial que persigue favorecer a los empleados cubiertos por el mismo. *Morales v. Adm. Sistemas de Retiro,* 123 D.P.R. 589, 595 (1989). Bajo las disposiciones de esta ley, el empleado obtiene un derecho garantizado sobre sus aportaciones y al *"jubilarse"* tiene derecho a recibir una anualidad, por cuanto el propósito de la referida legislación es proveerle un ingreso mínimo de subsistencia al empleado jubilado. *Calderón v. Adm. Sistemas de Retiro*, 129 D.P.R. 1020, 1031-1032 (1992); *In re: Castro y Torres Braschi*, 73 D. P.R. 564 (1952).

Según los artículos 9 y 11 de la Ley Núm. 447, los empleados que quedaren incapacitados para el servicio tendrán derecho a recibir una anualidad por incapacidad ocupacional, siempre y cuando se demuestre a satisfacción de la Administración de que por motivos de dicha incapacidad, el empleado se encuentra total y permanentemente imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado o para trabajar en cualquier empleo retribuido con retribución igual, por lo menos, a la que percibe. 3 L.P.R.A. secs. 769 y 771.

Los requisitos establecidos por estas disposiciones de la ley fueron incorporados al Reglamento Núm. 4930 de 25 de junio de 1993, en adelante, el Reglamento. La Regla 24.2 de dicho Reglamento dispone que para tener derecho a una pensión por incapacidad ocupacional, debe establecerse, entre otros requisitos, que el participante ha presentado *"suficiente prueba médica en cuanto a la incapacidad mental o física" y que el Fondo del Seguro del Estado haya determinado que la condición incapacitante está relacionada con el empleo del participante y es compensable."* *Id.* Por su parte, la Regla 24.4 señala que *"[s]e considerará capacitado al participante si no está totalmente y permanentemente incapacitado e imposibilitado para cumplir los deberes de cualquier empleo retribuido, con un sueldo o retribución, por lo menos igual a la que esté percibiendo."* *Id.*

El Tribunal Supremo ha indicado que la incapacidad que obligue al retiro del empleado con derecho a la anualidad que autoriza la ley, debe ser de tal naturaleza que le inhabilite para desempeñar las funciones de su empleo y de cualquier otro empleo remunerativo. *Sánchez v. A.S.R.E.G.J.,* 116 D.P.R. 372, 376 (1985). A los fines de la Ley de Compensaciones por Accidentes del Trabajo, aunque una persona lesionada fuera capaz de realizar parte de un empleo, desde el punto de vista legal se le puede considerar como totalmente inhabilitada permanentemente si no puede realizar aquellos aspectos sustanciales y básicos del trabajo; o sea, si sus servicios son tan limitados que no hay un mercado o una demanda para ella; esto es, la habilidad limitada de una persona para ganar dinero ocasionalmente no aminora el concepto legal del criterio de incapacidad total bajo dicho estatuto. Véase, *Rodríguez Ortiz v. Comisión Industrial,* 90 D.P.R. 764 (1964).

En *Hernández Pérez v. Adm. Sistemas de Retiro*, KLRA-2001-00759, el Panel IV del Circuito Regional I de San Juan de este Tribunal de Circuito de Apelaciones indicó que:

*"Los 'criterios médicos' mencionados en la Regla 24.4 del Reglamento son aquellos adoptados por las autoridades federales bajo la Ley de Seguridad Social Federal, 20 C.F.R. Pt. 404, Subpt. P., App. I. Véase Reglamento Núm. 4930, R. 5.9.*

*En la jurisdicción federal, al determinar si un individuo se encuentra totalmente incapacitado para llevar a cabo su trabajo, dentro del contexto de la Ley de Seguridad Social Federal, se considera, no solamente si su impedimento es de tal naturaleza que le impide llevar a cabo sus funciones, sino además, si no puede llevar a cabo otro trabajo remunerativo, a la luz de "su edad, educación y experiencia de trabajo." 42 U.S.C. sec. 423(d).*

*De acuerdo a la reglamentación adoptada bajo dicho estatuto, cuando el impedimento sufrido por una persona cumple cabalmente con los criterios médicos enumerados en el mencionado Apéndice I, la persona se*

*considera incapacitada, sin necesidad alguna a hacer referencia a los factores socioeconómicos y vocacionales de edad, educación y experiencia. Véase, 20 C.F.R. sec. 404.1520(d).*

*No obstante, si a base de los criterios enumerados en el Apéndice I, no se puede llegar a una determinación, entonces se evalúa la capacidad funcional de la persona para seguir llevando a cabo la tarea que tenía antes. 20 C.F.R. sec. 404.1520(e). Si no puede, entonces se evalúa su capacidad residual funcional para hacer otro trabajo remunerativo, a la luz de su edad, educación y experiencia previa. 20 C.F.R. sec. 404.1520(f).*

*Este esquema es consistente con el adoptado en nuestra jurisdicción bajo la Ley Núm. 477, [sic]. Bajo el mismo, el cumplimiento o no con los criterios médicos enumerados en el Apéndice I de la Ley de Seguridad Social Federal, no es necesariamente determinante de la cuestión de si el empleado está o no incapacitado. [4] La referencia a dichos criterios es el primer paso de la pesquisa, pero no agota la misma. Si el empleado no cumple con los criterios del listado, entonces hay que determinar si la condición particular que tiene le permite seguir desempeñando las tareas del cargo específico que ocupaba y, de no ser así, si existe algún otro trabajo que podría realizar en el servicio del patrono o en cualquier otro empleo igualmente retribuido, a la luz de su edad, educación y experiencia de trabajo.*

*...*

*El Tribunal Supremo de Puerto Rico ha reconocido que, históricamente, no ha sido fácil a los tribunales la determinación de qué significa el concepto inhabilidad o incapacidad para realizar cualquier trabajo remunerado. Rodríguez Ortiz v. Comisión Industrial, 90 D.P.R. 764, 773 (1964).*

*Sin embargo, sí ha resaltado que la jurisprudencia existente ha coincidido "en que ello no significa que el obrero tenga que estar tan impedido o inhabilitado físicamente, o que tenga una condición de salud tan ruinosa que su estado no le permita ninguna actividad, excepto mantenerse vivo." Id., pág. 773.*

*Las expresiones del Tribunal Supremo son en el contexto de la Ley de Compensaciones por Accidentes del Trabajo. No obstante, dicho estatuto, al igual que otros reseñados en el caso de Rodríguez Ortiz v. Comisión Industrial, supra, tiene un lenguaje similar al que la Ley del Sistema de Retiro utiliza para describir la incapacidad total y permanente. Las lesiones que tengan por consecuencia la incapacidad total y permanente del obrero para hacer toda clase de trabajo u ocupaciones remunerativas. 11 L.P.R.A. sec. 3(d).*

*En Rodríguez Ortiz v. Comisión Industrial, supra, se reseñó que bajo las leyes de compensaciones a obreros, aunque una persona fuera capaz de realizar parte de un empleo, desde el punto de vista legal, se le puede considerar como totalmente incapacitada si no puede realizar aquellos aspectos sustanciales y básicos de trabajo, o sea, que si los servicios que puede prestar son tan limitados en calidad, cantidad o en cuanto a su condición de confiables, de modo que no hay un mercado o demanda para ellos, puede considerarse a la persona como totalmente incapacitada." Id., pág. 772.*

Luego de esta discusión normativa, resulta necesario examinar la prueba que la Junta analizó en el presente caso. Según consta en la resolución recurrida, en lo relacionado a la prueba médica existente en el caso de la recurrente, la Junta expresó que:

*"Del examen del expediente se desprende que la apelante ha sido evaluada por diferentes especialistas, entre los que se encuentran los siguientes con sus respectivos diagnósticos:*

*El Dr. José T. Medina, el día 11 de enero de 1994, luego de un "Pulmonary Funcion Test", encontró lo siguiente: "Air Trapping".*

El Dr. C. M. Alverio Colón en su informe del 25 de enero de 1994, diagnosticó: "S/P Lt Ankle Sprain". Su prognosis fue "Bueno".

El Dr. William González, en su informe del día 14 de febrero de 1994, diagnosticó: Hiperactividad Bronquial. Su prognosis fue: "aún en tratamiento". Las pruebas objetivas de laboratorios indican, además, sinusitis frontal.

El Dr. Edgar Alexis Rodríguez, en su informe del día 26 de agosto de 1994, encontró lo siguiente:

"ASSESMENT: 43 years old woman with bronchial asthma, presenting frequent episodes of dry cough nonetheless at physical exam with clear lungs and with normal spirometry." En este examen se encontró los pulmones claros, el estudio pulmonar fue normal, aunque su queja principal fue la falta de respiración ("shortness of breath").

De la evaluación ortopédica que hiciera el Dr. César Cintrón Valle, Cirujano Ortopeda, de fecha 27 de septiembre de 1994, su diagnóstico fue: "No encontramos patología ortopédica" y su recomendación: "no hay ninguna condición que incapacite la apelante para llevar a cabo trabajo productivo o su trabajo usual". De este examen se encontró que los movimientos del cuello eran normales, no había espasmo muscular, deformidad ni áreas dolorosas, en la columna LS, los movimientos eran normales, la prueba de Lasegue fue negativa. En las radiografías de la columna cervical y la columna LS, que se le tomaron a la apelante el día del examen, fueron todas negativas.

En cuanto a la condición emocional que padece la apelante, surge del expediente que sometieron evaluaciones del Dr. Pablo Pérez (17 de enero de 1997) en el cual indica que la apelante vive sola, se cuida sin ayuda, mantiene relaciones familiares e interpersonales adecuadas, realiza las tareas del hogar y los medicamentos que usa es Prosac 20, Vistaril 50, Buspar 5bid y recomienda tratamiento.

En la segunda etapa del caso de autos, cuando se reabrió, la Administración recibió en adición los siguientes informes médicos:

El Dr. Edgar A. Rodríguez examina la Apelante el día 15 de junio de 2000. Su impresión fue: "A 49 years old woman with bronchial asthma since 1992, that she claims began at workplace. At physical exam and spirometry she was found normal, nonetheless she claims frequent exarcebation". En este examen del Dr. Rodríguez se encontró que el estudio pulmonar fue normal con una "oxymetry" de una 100% y comenta que los hallazgos son más bien subjetivos que objetivos y su diagnóstico es asma bronquial estable.

El Dr. Rodrigo Freytes en su "Mental Impairment Evidencie Report" del día 15 de junio de 2000, diagnosticó: Trastorno Depresivo Mayor Recurrente, Severo – Sin Psicosis, Asma Bronquial, Hipertensión Sanguínea, Diabetes Mellitus con un GAF de 55%. Su prognosis fue: "Reservado". Indica que tendría problemas para concentrar, su capacidad está menoscabada y que en situaciones de "estrés" reacciona con llanto. En el Eje IV indica pobre condición de salud y los medicamentos que utiliza son Paxil y Wellbutrin, pero no indica las dosis.

La Dra. Lydia Fernández Abalde, Asesor Médico Psiquiatra, de la Administración en su informe de Revisión Médica del Expediente de fecha 23 de agosto de 2000, concluyó que de los informes médicos que existen en el expediente, la participante no llenaba ni igualaba severidad de criterios A1 y B de listado 12.04 ni A y B de listado 12.06 para una incapacidad ocupacional total y permanente por condición emocional. En su informe de revisión indica que de dichos informes médicos la apelante se muestra en contacto con la realidad, vive sola (actualmente vive con la hija, según su testimonio en la vista administrativa), lleva a cabo sus actividades diarias, no hay trastorno de pensamiento, no hay limitaciones marcadas en su capacidad para concentrarse, se

*contradice y no hay prueba ni se documenta una condición orgánica cerebral que origine las limitaciones relacionadas a funciones cognoscitivas, intelecto y memoria.*

*De la Revisión Médica del Expediente de fecha 3 de octubre de 2000, realizada por el Dr. F. J. Rodríguez de la Obra, éste determinó que el caso no reunía los requisitos de la Agencia para una IO, que no llenaba los listados 302 ABC, 3.03 ni algún otro.*

*Surge además que la apelante ha estado en más de diez ocasiones hospitalizada por su condición de asma bronquial. Aparte de las condiciones relacionadas como consecuencia de un accidente de trabajo cubierto en este Sistema de Retiro, la apelante padece de hipertensión arterial, diabetes mellitus, espasmos cervicales y angina a base de las cuales tiene aprobada una pensión por incapacidad del Seguro Social Federal en el cual se consideraron todas las condiciones físicas y mentales que padece la apelante y considerando que según sus análisis la apelante no tiene destrezas transferibles pues no puede realizar las labores inherentes a su cargo. Sin embargo, estas condiciones y criterios no pueden ser considerados por esta Junta por no contar la apelante con los 10 años de servicios cotizados conforme lo requiere la ley."* Véanse las páginas 339-340 del Apéndice del Recurso de Revisión.

De una lectura de esta cita se desprende que la Junta analizó un gran cúmulo de evidencia. Sin embargo, la recurrente nos indica que la evidencia existente en autos demostraba que ella estaba incapacitada total y permanentemente y que en la interpretación de la Ley, la Junta no debía tratar de resolver el problema del déficit económico del Sistema denegándole los beneficios de la pensión a la cual era acreedora. Véase la página 12 de la Solicitud de Revisión. Señaló además que:

*"Al juzgador hacer las determinaciones de hechos, éste omite totalmente sin pasar juicios sobre ellos, hechos que son esenciales para la justa adjudicación de este caso; e incluso omite hechos cuya veracidad surge de prueba documental NUNCA controvertida. La única justificación imaginable es que omitieron todos los hechos que podría llevarlos a tener que concederle los beneficios solicitados a la apelante."*

La recurrente nos plantea en su *"Solicitud de Revisión"* que ella fue tratada y evaluada por distintos médicos tanto por la condición de Asma Bronquial como por la Depresión Mayor Severa, Recurrente, y que todos estos informes médicos obraban en los autos del caso en la Administración. Véase la página 7 de la Solicitud de Revisión. La recurrente los desglosa de la siguiente manera:

*"a) Copia de Record Médico de hospitalización de la apelante en el Hospital El Buen Pastor de Arecibo, del 11 de abril de 1994 al 15 de abril de 1994. Sus diagnósticos de admisión y de alta fueron los mismos: 'Status Asthmaticus' y 'Acute Gastritis'. (Apéndice XII, XIII y XIV).*

*b) Copia de 'Expediente Clínico de Sala de Emergencias' del Hospital El Buen Pastor a donde tuvo que acudir el día 3 de abril de 1995, por estar padeciendo de 'crisis asmática con dificultad respiratoria'. (Apéndice XIX).*

*c) Copia de 'Expediente Clínico de Sala de Emergencias' del Hospital El Buen Pastor a donde tuvo que acudir el día 26 de octubre de 1994, por estar padeciendo de crisis asmática con dificultad respiratoria. (Apéndice XIII).*

*d) Copia de 'Case Summary of Admission and Discharge' del Hospital El Buen Pastor donde fue admitida el día 30 de octubre de 1993 y fue dada de alta el día 5 de noviembre de 1993 con diagnóstico de admisión de 'crisis asmática' y diagnósticos finales de 'Status Asthmaticus, Sinusitis, Gastritis'. (Apéndice V)*

*e) Copia de 'Expediente Clínico de Sala de Emergencia' del Hospital El Buen Pastor de donde surge que fue*

*hospitalizada el día 1ro de marzo de 1994 con diagnóstico de 'Crisis Asmática'. (Apéndice XI)*

*f) Copia de 'Case Summary of Admission and Discharge' de donde surge que fue admitida el día 24 de mayo de 1995 con diagnóstico de 'Status Asthmaticus' y fue dada de alta el día 30 de mayo de 1995 con diagnósticos de 'Status Asthmaticus, Acute gastroenteritis, Arterial Hypertension'. (Apéndice XVI)*

*g) Copia de 'Case Summary of Admission and Discharge' del Hospital El Buen Pastor de donde surge que fue hospitalizada el día 8 de septiembre de 1995 con diagnóstico de 'Status Asthmaticus' y fue dada de alta el día 12 de septiembre de 1995 con diagnóstico final de 'Status Asthmaticus'. (Apéndice XXIII)*

*h) Copia de 'Case Summary of Admission and Discharge' del Hospital El Buen Pastor de donde surge que fue hospitalizada el día 4 de enero de 1996 con diagnóstico de 'Status Asthmaticus' y fue dada de alta el día 8 de enero de 1996 con diagnóstico de 'Status Asthmaticus, Diabetes Mellitus'. (Apéndice XXIV)*

*i) Copia (por los dos lados) de las Tarjeta de Citas del Centro de Salud Mental de Arecibo, donde recibió tratamiento la reclamante bajo el número de Récord 31,387. (Apéndice VII)*

*j) Copia del Récord Médico de la reclamante con el Dr. José J. López Bidot, Médico de Cabecera, durante el período comprendido entre el 14 de mayo de 1996 al día 5 de marzo de 2002; y del cual surge tratamiento continuo por las condiciones de Asma Bronquial y emocional.*

*k) Copia del Record Médico de la reclamante con el Dr. Carlos D. Chico Méndez, médico generalista. De esta surge claramente su tratamiento por las condiciones de Asma Bronquial y emocional.*

*l) Copia de 'Discharge Summary' de fecha 9 de abril de 2000, del que surge que estuvo hospitalizada en el Hospital Doctor's Center con diagnóstico de 'Brochial Asthma, Diabetes Mellitus y Hypertension'.*

*m) El Dr. Rodrigo Freytes, Siquiatra, en su informe del día 15 de junio de 2000, le diagnosticó a la apelante un 'Trastorno Depresivo Mayor Recurrente, Severo'; y le hace una prognosis de: 'Reservado'. Indica que tenía problemas para concentrar, su capacidad está menoscabada y dice que en situaciones de 'stress' ésta reacciona con llanto. Indica que tiene una pobre condición de salud. (Apéndice XXXII)*

*n) Copia de Resumen de Record Médico del Hospital Dr. Susoni, de donde surge que la reclamante fue hospitalizada el día 3 de diciembre de 2001 y fue dada de alta el 5 de diciembre de 2001 con diagnóstico de 'Status Asthmaticus, Adult Bronchitis'."* (Apéndice XXXV)

No albergamos duda alguna que aunque la Junta tuvo ante sí un gran cúmulo de informes médicos que ponderar, dicho foro no faltó a su deber de emitir una decisión razonable fundamentada en la evidencia sustancial obrante en autos. El Artículo 11 de la Ley Núm. 447 dispone claramente que para que se determine que un empleado es acreedor a una pensión por incapacidad, éste tiene que probar que el mismo se encuentra total y permanentemente incapacitado para cumplir con los deberes de cualquier cargo. Como indicáramos anteriormente, la parte afectada tenía que demostrar que existía otra prueba en el récord que redujera o menoscabara el valor probatorio de la evidencia impugnada, hasta el punto de que no se pudiera prudentemente concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. No podemos concluir que la determinación de la Junta fuera irrazonable y que no merezca deferencia. Los errores señalados no fueron cometidos.

## IV

Por los fundamentos anteriormente expresados, se deniega la expedición del auto de revisión.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

Aida I. Oquendo Graulau
Secretaria General

**ESCOLIOS 2003 DTA 99**

**1.** Por el primer accidente, el Fondo del Seguro del Estado no le reconoció una incapacidad porque para esa fecha (12 de febrero de 1987), la recurrente no cotizaba para el Sistema de Retiro. Un segundo accidente ocurrido el 27 de enero de 1988, el FSE determinó que la recurrente sufrió una condición que llamó *"strain dorso lumbar"*. Por el accidente ocurrido el 10 de enero de 1989, el FSE le reconoció una incapacidad equivalente a la pérdida de un 5% de las funciones fisiológicas del tobillo izquierdo. Por el accidente del 24 de febrero de 1992, el FSE le relacionó un *"Trauma Lower Back"* y le reconoció una incapacidad equivalente a la pérdida de un 5% de las funciones fisiológicas generales.

**2.** Este caso había sido archivado anteriormente luego de que la recurrente solicitara el archivo sin perjuicio del mismo hasta que el FSE emitiera una decisión final en el caso.

**3.** Debemos indicar que el 18 de diciembre de 2000, la Administración del Seguro Social determinó que la incapacidad de la recurrente no había terminado por lo que ésta seguiría disfrutando de los beneficios del seguro social. Véase la página 289 del Apéndice del Recurso de Revisión. La recurrente nos indica en su escrito que la Junta erró al no tomar en consideración esta determinación del Seguro Social que añadía evidencia a los expedientes e informes médicos que sostenían su alegación de que se encuentra incapacitada total y permanentemente para cualquier labor remunerativa. Véase la página 17 del Recurso de Revisión.

**4.** En *Clemente Hernández v. Adm. Sistemas de Retiro*, KLRA-2001-00145, se indicó que:

*"La facultad de examinar la prueba y determinar su suficiencia corresponde por ley al Administrador, por lo que la decisión del Fondo del Seguro del Estado, así como la del Seguro Social representan factores a ser considerados por la agencia recurrida, pero no son determinantes en su decisión. La Administración está facultada a tomar una determinación independiente en lo que respecta a la naturaleza de la incapacidad ocupacional o no ocupacional."*