EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Municipio de San Juan<br><br>Recurrida<br><br>v.<br><br>Junta de Planificación, Administración de Reglamentos y Permisos<br><br>Agencias Recurridas<br><br>Plaza las Américas, Inc.<br><br>Peticionaria | Certiorari<br><br>2006 TSPR 155<br><br>169 DPR \_\_\_\_ |

Número del Caso: CC-2004-1212

Fecha: 18 de octubre de 2006

Tribunal de Apelaciones:

        Región Judicial de San Juan


Juez Ponente:
        Hon. Yvonne Felicino Acevedo

Abogados de la Parte Peticionaria:

        Lcdo. Daniel Martínez Oquendo
        Lcda. Maretsa Rodríguez Portela
        Lcdo. José A. Andréu García
        Lcdo. José R. Lázaro Paoli

Abogados de la Parte Recurrida:

        Lcda. Vanesa García Quiñones
        Lcdo. Carlos D. Rodríguez Boneta

Oficina del Procurador General:

        Lcda. Lizette Mejías Avilés
        Procuradora General Auxiliar

Materia: Revisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

INTEGRACION DE SALA

ORDEN

San Juan, Puerto Rico, a 18 de octubre de 2006.

Debido a la inhibición del Juez Presidente señor Hernández Denton y a la no intervención de los Jueces Asociados señor Rebollo López y señor Fuster Berlingeri, se constituye una Sala Especial integrada por el Juez Asociado señor Rivera Pérez, como su Presidente y las Juezas Asociadas señora Fiol Matta y señora Rodríguez Rodríguez para entender en el caso CC-2004-1212 Municipio de San Juan v. Junta de Planificación, Administración de Reglamentos y Permisos, Plaza Las Américas, Inc.

Lo decretó y firma.


Federico Hernández Denton
Juez Presidente


Certifico:


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio de San Juan

     Recurrida

       v.

Junta de Planificación,    CC-2004-1212
Administración de Reglamentos y
Permisos

     Agencias Recurridas

Plaza las Américas, Inc.

     Peticionaria

Sala Especial integrada por el Juez Asociado señor Rivera Pérez, como su Presidente y las Juezas Asociadas señora Fiol Matta y señora Rodríguez Rodríguez. Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez.

San Juan, Puerto Rico, a 18 de octubre de 2006.

El presente recurso nos permite determinar si actuó correctamente el Tribunal de Apelaciones al confirmar dos (2) resoluciones consideradas por dicho foro mediante recurso de revisión judicial. En específico, una resolución emitida por la Junta de Planificación autorizando un proyecto institucional presentado por el Gobierno Municipal de San Juan y otra resolución emitida por la Administración de Reglamentos y Permisos, en adelante A.R.P.E., aprobando un anteproyecto sometido por el mismo Municipio. Veamos los hechos que originan el presente recurso.

I

El 19 de febrero de 2002, el Municipio de San Juan, en adelante el Municipio, presentó ante la

Junta de Planificación, en adelante Junta, una Consulta de Ubicación para la autorización de un proyecto institucional comercial en los predios del Complejo Deportivo de la Capital, propiedad del Municipio, en la Avenida F.D. Roosevelt. Según surge de la referida consulta, el proyecto institucional propuesto consiste en la construcción de un edificio de exhibiciones ("Expo Center") **que formará parte del Coliseo Roberto Clemente**.[1]

El 29 de abril de 2002, la Junta emitió una Resolución dejando en suspenso la referida consulta por treinta (30) días para que "la parte proponente rediseñe la propuesta de forma tal que cumpla con los espacios de estacionamientos requeridos mediante la reglamentación vigente".[2] El Municipio, sometió entonces un segundo "Memorial Descriptivo". Mediante el memorial en cuestión, el Municipio propuso la introducción de una nueva estructura de estacionamiento que aumenta la capacidad del Complejo Deportivo de la Capital por unos 654 espacios

---

[1] Apéndice del recurso de *Certiorari*, págs. 172-184. Específicamente se propuso la construcción de un edificio de exhibiciones "el cual formará parte del edificio del Coliseo Roberto Clemente. El salón principal comprende 40,000pc, áreas de pre-función de 18,290pc, entre otras facilidades. El área de ocupación total será de 90550pc. [sic] **El proyecto requerirá modificaciones a la estructura del Coliseo**. La parte proponente señala que actualmente el Complejo Deportivo de San Juan cuenta con 3,968 espacios de estacionamiento. El edificio propuesto reducirá al menos 495 espacios, dejando 3,473pc [sic]. El Regl.4 req. 5,830. La parte proponente señala que la Resol. JPI-4-15-99 permite que se consideren usos combinados no simultáneos y estacionamientos compartidos". (Énfasis suplido). Íd., 172.

[2] Íd., pág. 152.

adicionales.[3]  Propuso, conjuntamente, un aumento de unos 9,000 pies cuadrados al área de exhibiciones presentada en la consulta original.[4]  Surge del "Memorial Descriptivo" que, debido a la naturaleza del proyecto, el Municipio solicitó que la Junta autorizara proceder "con los permisos subsiguientes que conduzcan a la construcción del Nuevo Edificio de Exhibiciones y al edificio de estacionamiento de forma separada".[5]

El 3 de mayo de 2002, Plaza las Américas, Inc., en adelante Plaza, solicitó intervención al procedimiento de consulta ante la Junta alegando que el mismo presentaba un déficit de estacionamiento que causaría un caos en el área.[6]  Específicamente, sostuvo que sus intereses propietarios resultarían adversamente afectados por el proceso llevado ante dicha agencia, toda vez que "los usuarios de las facilidades del Municipio de San Juan en el complejo deportivo hacen uso de las facilidades de estacionamiento de Plaza Las Américas, cuando las

---

[3] Íd., pág. 177.

[4] Según surge del memorial en cuestión, el referido aumento respondió a ciertos estudios de mercadeo y rentabilidad realizados por el Municipio que reflejaban que para asegurar la rentabilidad del área era necesario un área de exhibiciones "que no sea menor de 49,000p2". Se destacó que, el cálculo de espacios de estacionamientos, según propuesto, tomaba en cuenta el área adicional.

[5] Véase, esc. 3.

[6] Apéndice del recurso de *Certiorari*, págs. 453-455.

facilidades de estacionamiento de dicho complejo resultan insuficientes".[7]

Ante la inacción de la Junta respecto a la referida solicitud de intervención, Plaza presentó una "Segunda Solicitud de Intervención" reiterando su interés en que se le permitiera intervenir en el proceso.[8]

El 31 de julio de 2003, Plaza presentó ante la Junta un "Escrito Informativo". Informó a dicha agencia de la existencia de otro procedimiento administrativo, promovido también por el Municipio, solicitando la autorización de una nueva construcción en los predios del Complejo Deportivo de la Capital. Esta vez, señaló, para ampliar el Estadio Hiram Bithorn.[9] Sostuvo que cada vez que el Municipio proponía nuevos proyectos en el Complejo Deportivo de la Capital ante la Junta, tomaba en consideración la totalidad del área de estacionamientos del Complejo Deportivo de la Capital, como si el proyecto propuesto fuese la única operación a llevarse a cabo en éste. En otras palabras, sostuvo que de forma consistente el Municipio parte del supuesto equivocado de que el área de estacionamiento disponible en el Complejo Deportivo de la Capital es para servir al proyecto propuesto, lo que tiene el efecto de ignorar los otros usos que se le dan a los predios del referido Complejo y que generan una gran

---

[7] Íd., pág. 453.

[8] Íd., págs. 432-436.

[9] Íd., págs. 109-113.

necesidad de espacios de estacionamiento. Finalmente, arguyó que lo anterior afecta gravemente sus operaciones por lo que "no tiene otra alternativa que oponerse a todo nuevo proyecto en el Complejo Deportivo hasta que se provean las áreas de estacionamiento necesarias y requeridas para la operación del mismo en su totalidad".[10]

Luego de varios trámites procesales, el 4 de septiembre de 2002, la Junta notificó su resolución del 6 de agosto de 2002 aprobando la consulta en cuestión. En su resolución, aceptó la intervención solicitada por Plaza.[11]

Entre los acuerdos contemplados en dicha resolución, cabe señalar los siguientes:

> Del examen y análisis hecho se desprende que es viable el desarrollo de los terrenos anteriormente descritos para el uso propuesto, condicionado a los siguientes señalamientos y recomendaciones, los cuales habrán de tomarse en consideración al prepararse y someterse en la próxima etapa del trámite del proyecto, etapa que será determinada por la Administración de Reglamentos y Permisos:
>
> 1. Se autoriza un proyecto institucional que consiste de un edificio **anexo al Coliseo Roberto Clemente**, el cual será dedicado a sala de exhibiciones. El mismo tendrá un área de construcción total de 107,525 pies cuadrados, de los cuales 40,000 pies cuadrados serán dedicados al salón principal, 18,290 pies cuadrados para áreas de pre-función, entre otros. Además, se propone un edificio de estacionamiento para un total de 1,457 espacios de estacionamiento a proveerse.

---

[10] Íd.

[11] Íd., págs. 54-60.

2.

   .    .    .    .    .    .    .    .

3.  Deberá cumplir con las disposiciones del Reglamento Número 4 en cuanto a la provisión de estacionamiento.

4.  Se acepta como interventor al licenciado Daniel Martínez Oquendo en representación de Plaza Las Américas.(Énfasis suplido).

**Nada expresó la Junta en su resolución respecto a la disposición reglamentaria utilizada para el cálculo de los estacionamientos requeridos para el proyecto evaluado.**

Al día siguiente, el Municipio solicitó a la Junta, sin éxito, la aclaración de la referida resolución.[12] Por su parte, Plaza solicitó la reconsideración de la resolución. Dicha solicitud fue declarada sin lugar por la Junta luego de acoger la misma y conceder a las partes varios plazos para presentar sus respectivas posiciones.

Por otro lado, el 14 de noviembre de 2002, el Municipio presentó ante A.R.P.E. un anteproyecto para su aprobación. El 3 de febrero de 2003, A.R.P.E. aprobó el anteproyecto mediante resolución a esos efectos.

Inconforme con ambas determinaciones, Plaza acudió al Tribunal de Apelaciones mediante sendos recursos de revisión judicial. Dicho foro consolidó ambos recursos, expidió el auto solicitado y confirmó ambas resoluciones.

_____

[12] Específicamente, solicitó que aclarara el inciso 3 (respecto a la provisión de estacionamiento) de su resolución original. Requirió, además, que se aclarara el área del pietaje total del proyecto, de forma que reflejara exactamente el área de construcción del edificio proyectado, de conformidad con el segundo Memorial Descriptivo. Apéndice del recurso de *Certiorari*, págs. 273-274.

Insatisfecha, Plaza acudió ante nos mediante recurso de *Certiorari* el 23 de diciembre de 2004, señalando los errores siguientes:

**PRIMER ERROR: Erró el TA al confirmar determinaciones de la JP y A.R.P.E. mediante las que se autorizó un proyecto en el Complejo Deportivo de San Juan cuando éste presenta un serio déficit de espacios de estacionamiento, violando las disposiciones del Reglamento de Zonificación (Reglamento de Planificación Núm. 4) sobre esa materia.**

**SEGUNDO ERROR: Erró el TA al confirmar una determinación de la JP mediante la que se autorizó el proyecto objeto del caso de epígrafe sin escuchar a la Peticionaria, violando el derecho de ésta a que no se afecten adversamente sus derechos propietarios sin un debido proceso de ley.**

**TERCER ERROR: Erró el TA al confirmar unas determinaciones de la JP y la A.R.P.E. mediante las que se autorizó el proyecto objeto de consulta en violación a lo dispuesto en la Ley Número 183 de 17 de agosto de 2002.**

Habiendo comparecido las partes litigantes por medio de sus respectivos alegatos, estamos en posición de resolver los asuntos traídos ante nuestra consideración. Veamos.

II

Mediante el primer señalamiento de error, nos corresponde determinar si actuó correctamente el Tribunal de Apelaciones al confirmar las resoluciones de la Junta (respecto a la consulta de ubicación) y A.R.P.E. (anteproyecto). Es el argumento de Plaza que la Junta

interpretó incorrectamente la reglamentación aplicable al catalogar erróneamente el proyecto como uno nuevo cuando debió haberlo considerado como una **ampliación al Complejo Deportivo de la Capital**. Ello, en su opinión, porque el referido complejo es uno solo y cada nueva facilidad que se añade al mismo tiene el efecto de ampliarlo. Según razona, por tratarse de una ampliación, es de aplicación la Sección 74.01(4) del Reglamento de Zonificación, Reglamento Núm. 4.[13] Veamos.

La Junta es el organismo gubernamental creado con el propósito de desarrollar los recursos humanos, económicos, ambientales y físicos de forma coordinada para crear las condiciones necesarias que propendan al desarrollo integral de la sociedad.[14] Su creación obedece a la necesidad de velar por la ordenada y adecuada utilización de nuestros escasos terrenos y recursos naturales.[15]

Por su parte, en virtud de la Ley Núm. 76 de 24 de junio de 1975[16], se le otorgó a A.R.P.E. la responsabilidad de ejecutar las funciones operacionales que hasta entonces desempeñaba la Junta y aplicar y velar por el cumplimiento

---

[13] Reglamento de Zonificación de Puerto Rico, Reglamento Núm. 6211 de 5 de noviembre de 2000.

[14] Ley Orgánica de la Junta de Planificación, Ley Núm. 75 de 24 de junio de 1975, 23 L.P.R.A. sec. 62c. Véase, además, Mun. de San Juan v. Bosque Real S.E., 2003 T.S.P.R. 31, 2003 J.T.S. 33, 158 D.P.R. ___(2003).

[15] Art. VI, Sec. 19, Const. del E.L.A., 1 L.P.R.A.

[16] 23 L.P.R.A. sec. 71, *et seq.*, según enmendada.

de las leyes y reglamentos de la planificación.[17]  Por ello, se dispuso que A.R.P.E. debía establecer estrecho enlace y coordinación, entre otros, con organismos gubernamentales como la Junta para lograr que  la política pública sobre el desarrollo económico, social y físico de Puerto Rico se estructure mediante el esfuerzo integral de todos los organismos gubernamentales.[18]

Al amparo de las facultades delegadas por ley, la Junta aprobó el Reglamento Núm. 4, *supra*, para guiar y controlar el uso y desarrollo de los terrenos en Puerto Rico.   De este modo, mediante la zonificación se establecen las normas esenciales para establecer o fijar los usos adecuados para todos los terrenos del país.

El Reglamento Núm. 4, *supra*, establece métodos objetivos para hacer los cálculos matemáticos que permiten determinar el número específico de espacios de estacionamientos requeridos de acuerdo al tipo de proyecto.   En específico, la sección 74.03 del referido cuerpo reglamentario dispone, en cuanto a los espacios de estacionamiento necesarios, lo siguiente:

> Provisión de espacios de estacionamiento de Vehículos-los espacios mínimos de estacionamiento de vehículos a proveerse se determinarán según se indica a continuación:
>
> .     .     .     .     .     .
> .     .

---

[17] Íd., sec. 71d(p).

[18] Íd., sec. 71d(r).   Véase, además, Metropolitana S.E. v. A.R.Pe., 138 D.P.R. 2000 (1995).

8. Escuelas comerciales o vocacionales, colegios o universidades, auditorios, salones de convenciones, teatros, cinematógrafos, estudios, estadios, hipódromos, canódromos, velódromos, redondeles de patinaje, galleras, parques de recreación comercial, funerarias, o cualquier otro sitio similar de reunión pública – Por lo menos un (1) espacio por cada cinco (5) asientos, o parte de éstos, que se provea para tales fines.

Por su parte, la sección 74.01(4) del concernido reglamento, establece que "[e]n casos de **ampliaciones** a edificios, la nueva área de estacionamiento requerida se calculará tomando en cuenta los usos existentes y los propuestos para la ampliación del edificio"(énfasis suplido); siendo la ampliación definida como "la extensión o aumento en el área bruta de piso o en la altura de una estructura".[19]

De conformidad con la sección 2164 de la Ley de Procedimiento Administrativo Uniforme[20], en adelante L.P.A.U., al ejercer nuestra función revisora son de suma importancia las determinaciones de hecho y conclusiones de derecho consignadas en una decisión administrativa. Entre los importantes objetivos que persigue el efectuar determinaciones de hecho y conclusiones de derecho, cabe resaltar los siguientes: (1) proporcionar a los tribunales la oportunidad de revisar adecuadamente la decisión administrativa y facilitar esa tarea; (2) fomentar que la agencia adopte una decisión cuidadosa y razonada dentro de

---

[19] Íd., Sec. 1.00

[20] Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. sec. 2164, según enmendada.

los parámetros de su autoridad y discreción; (3) ayudar a la parte afectada a entender por qué el organismo administrativo decidió como lo hizo, y estando mejor informada, poder decidir si acude al foro judicial o acata la determinación; y (4) evitar que los tribunales se apropien de funciones que corresponden propiamente a las agencias administrativas bajo el concepto de especialización y destreza (expertise).[21]

Reiteradamente hemos reconocido que las determinaciones de los organismos administrativos especializados merecen gran consideración y respeto.[22] Recientemente, en Hernández v. Centro Unido, *supra,* reafirmamos que lo anterior se fundamenta en la vasta experiencia y el conocimiento especializado que ostentan las agencias acerca de los asuntos que le son encomendados. Por ello, el criterio rector al revisar las determinaciones administrativas es la razonabilidad en la actuación de la agencia recurrida.[23]

Así, la L.P.A.U. dispone que las determinaciones de hecho de las agencias serán sostenidas por el tribunal si se basan en evidencia sustancial que obre en el expediente administrativo; siendo evidencia sustancial aquella

---

[21] Reyes Salcedo v. Policía, 143 D.P.R. 85 (1997); Santiago v. Srio. de Hacienda, 119 D.P.R. 265 (1987).

[22] Véase, Hernández v. Centro Unido, 2006 T.S.P.R. 131, 168 D.P.R. ___ (2006); P.C.M.E. v. J.C.A., 2005 T.S.P.R. 202, 2006 J.T.S. 7, 166 D.P.R. ___ (2005).

[23] Íd.

evidencia que una mente razonable podría aceptar como adecuada para sostener una conclusión.[24] Lo anterior, pretende "evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor".[25]

No obstante, las conclusiones de derecho de los organismos administrativos que no involucren interpretaciones efectuadas dentro del ámbito de especialización de la agencia concernida, son revisables en toda su extensión.[26] Hemos resuelto que, como regla general, los tribunales deben darle peso a las interpretaciones que la agencia administrativa hace de aquellas leyes particulares que le corresponde poner en vigor, por lo que no pueden descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio.[27]

Por ello, los tribunales se abstendrán de avalar o deferir a la interpretación de la agencia si ésta: (1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente; o (3) lesionó derechos constitucionales

---

[24] *Supra*, sec. 2175. Véase, <u>Hernández v. Centro Unido</u>, *supra*, citando a <u>Otero v. Toyota</u>, 2005 T.S.P.R. 8, 2005 J.T.S. 13, 163 D.P.R. ___ (2005).

[25] <u>Hernández v. Centro Unido</u>, *supra*.

[26] Íd.

[27] <u>Hernández v. Centro Unido</u>, *supra*; <u>Mun. de San Juan v. J.C.A.</u>, 152 D.P.R. 673, 689 (2000).

fundamentales.[28] Es decir, esta deferencia judicial a la pericia administrativa cede ante una actuación irrazonable o ilegal.[29] Ello porque los tribunales no estamos llamados a imprimir un sello de corrección, so pretexto de deferencia, para avalar situaciones en que la interpretación de la agencia resulte contraria a derecho.[30]

En síntesis, la revisión judicial de las determinaciones administrativas se limita a determinar si la actuación administrativa fue razonable y ésta sólo cede cuando está presente alguna de las siguientes situaciones: (1) cuando la decisión no está basada en evidencia sustancial, (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación ilegal o una decisión carente de una base racional.[31]

En el presente caso, el Tribunal de Apelaciones concluyó que el proyecto propuesto no era una ampliación sino un proyecto nuevo. Por tratarse de una nueva edificación, sostuvo que el Municipio cumplió con la reglamentación vigente al proveer un (1) espacio de

---

[28] Hernández v. Centro Unido, *supra*.

[29] Íd.; T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70 (1999); Com. Seg. P.R. v. Antilles Ins. Co., 145 D.P.R. 226 (1998); Calderón v. Adm. Sistemas de Retiro, 129 D.P.R. 1020 (1992); Rivera v. A & C Development Corp., 144 D.P.R. 450 (1977).

[30] A.A.A. v. Unión Abo. A.A.A., 2002 T.S.P.R. 149, 2002 J.T.S. 155, 158 D.P.R.___(2002); Calderón v. Adm. Sistemas de Retiro, *supra.*

[31] Hernández v. Centro Unido, *supra*; Otero v. Toyota, *supra*.

estacionamiento por cada cinco (5) asientos, según requerido por la sección 74.03 del Reglamento Núm. 4, *supra*. Ello, sostuvo, luego de que la Junta le requirió al Municipio que rediseñara la propuesta original de forma tal que cumpliera con los espacios de estacionamiento necesarios.

Sin embargo, Plaza arguye que es de aplicación la sección 74.01(4) del Reglamento Núm. 4, *supra*. Este razonamiento se fundamenta, en su opinión, en que el Complejo Deportivo y todos sus elementos ubican en un solo predio y comparten sus accesos y áreas de estacionamiento, por lo que se compone de elementos diversos de **un solo predio**. Por ello, sostiene, que cada nueva facilidad tiene el efecto de ampliarlo y aumentar la capacidad para albergar público en sus diferentes componentes. Finalmente, alega que la Junta y A.R.P.E. autorizaron un proyecto que tiene un déficit serio de estacionamientos, incumpliendo las disposiciones del Reglamento Núm. 4, *supra*, toda vez que los espacios de estacionamientos se deben calcular tomando en consideración los usos existentes y los propuestos para la ampliación del edificio.

Cabe señalar que, tanto en la consulta de ubicación presentada por el Municipio como en la Resolución de la Junta aprobando la misma, surge que el proyecto propuesto consiste de un edificio **anexo** al Coliseo Roberto Clemente. Específicamente, la consulta de ubicación lo describe como "un edificio de exhibiciones el cual **formará parte del**

**edificio del Coliseo Roberto Clemente**".[32] (Énfasis suplido) Más aún, en la consulta de ubicación original el Municipio reconoció que el proyecto **requerirá modificaciones a la estructura** del Coliseo Roberto Clemente. También, en su resolución aprobando la consulta de ubicación, la Junta claramente expresó que se trataba de "un proyecto institucional que consiste de un **edificio anexo al Coliseo Roberto Clemente**"[33]. (Énfasis suplido)

Con ello en mente, y a la luz de lo dispuesto en el Reglamento Núm. 4, *supra*, el proyecto institucional vendría a formar parte del Coliseo Roberto Clemente. Por encontrarse **unido** al Coliseo Roberto Clemente, el "Expo Center" representaría una **ampliación** al referido Coliseo.[34] Ello, no porque consideremos al Complejo Deportivo de la Capital como un solo predio donde cada nueva facilidad que se añade tiene el efecto de ampliarlo[35] (como alega Plaza), sino porque el Reglamento Núm. 4, *supra*, define expresamente la ampliación como la extensión o aumento en el área bruta del piso o en la altura de una estructura.

---

[32] Apéndice del recurso de *Certiorari*, pág. 172.

[33] Íd., pág. 267.

[34] De conformidad con el Diccionario de la Lengua Española, el término anexo se utiliza para referirse a "enlazar, unir".

[35] Conforme a la definición de ampliación del Reglamento Núm.4. no vemos cómo el Complejo Deportivo de la Capital puede ser considerado una "estructura" y el "Expo Center" una "ampliación" de la misma.

Lo que implica la extensión o adición a las dimensiones de una estructura ya existente, como en el presente caso.

Ante el silencio de la Junta de explicar la disposición reglamentaria que utilizó para calcular los espacios de estacionamientos necesarios, no encontramos el fundamento utilizado por el foro intermedio apelativo para concluir que la disposición aplicable es la 74.03 del Reglamento Núm. 4, *supra*. Un estudio cuidadoso del expediente ante nos tampoco sostiene la conclusión del Tribunal de Apelaciones, de que la consulta de ubicación en controversia **no propone ampliar** el Coliseo Roberto Clemente.[36]

Concluido que el "Expo Center" es una ampliación del Coliseo Roberto Clemente, procede que devolvamos el caso a la Junta para que determine, de conformidad con lo aquí resuelto, si, a la luz de lo dispuesto en la sección 74.01(4) del Reglamento Núm. 4, *supra*, los 1,457 espacios de estacionamiento serían suficientes. Es decir, si la anterior cifra se calculó tomando en cuenta **los usos existentes del Coliseo Roberto Clemente y los propuestos para el "Expo Center"** como lo exige la sección 74.01(4), *supra*, en casos de ampliaciones.

Finalmente, resulta imperativo señalar que notamos una deficiencia en el Reglamento Núm. 4, *supra*, en cuanto a la forma de calcular los espacios de estacionamientos requeridos en situaciones como la presente. Un cuidadoso

---

[36] Véase, por ejemplo, Apéndice del recurso de *Certiorari*, págs. 55, 172 y 310-329.

estudio del mismo revela que no existen normas que atiendan adecuadamente este asunto como parte de una consulta de ubicación de un proyecto donde existe toda una gama de facilidades recreativas que comparten un mismo predio. Para fines de evaluar la cantidad de estacionamientos que requiere una estructura o facilidad, el reglamento establece métodos objetivos para determinar el número específico de espacios de estacionamiento requeridos. Sin embargo, si el proyecto objeto de una consulta es definido como una nueva edificación, el reglamento no exige que se consideren los usos de otros edificios existentes en el mismo predio al determinar la cantidad de espacios de estacionamiento requerida, como sí lo requiere en caso de una ampliación. Ello, haciendo abstracción a una realidad existente en predios como el Complejo Deportivo de la Capital. Nos preguntamos ¿que sucedería cuando existen una serie de facilidades que bien podrían considerarse como edificaciones independientes pero que, a la vez comparten un solo predio? ¿No militaría en contra de la ordenada y adecuada utilización de nuestros terrenos y recursos naturales el que el reglamento permita que se ignore la posible deficiencia de estacionamientos con el simple hecho de que se proponga una nueva edificación? ¿Es que acaso, por el hecho de que una edificación no represente una extensión o aumento en el área bruta del piso o en la altura de otra, no habría que considerar los usos combinados que se le da al mismo predio?

Resuelto lo anterior, nos corresponde determinar si actuó incorrectamente el foro intermedio apelativo al confirmar una determinación de la Junta de Planificación autorizando la consulta de ubicación "sin escuchar" a la aquí peticionaria. Es la posición de Plaza que, el enorme déficit de estacionamientos en el Complejo de Deportivo de la Capital le ocasionaría serios daños. Ello porque las personas que visitan el Coliseo, utilizan el estacionamiento de Plaza ante el enorme déficit de estacionamientos del Complejo Deportivo de la Capital. Lo anterior, alega, viola su derecho al debido proceso de ley. Sostiene que, al autorizar al Municipio a construir nuevas facilidades con un déficit de estacionamiento menoscaba el disfrute de su estacionamiento, que fue costeado por sus inquilinos y clientes. Alega, además, que el Municipio no le notificó oportunamente del proyecto, que la Junta no resolvió oportunamente su solicitud de intervención y no celebró vistas públicas para considerar la consulta.

Para que se active la protección del debido proceso de ley en su vertiente procesal tiene que haber un interés de libertad o propiedad afectado. Cumplida tal exigencia, hay que determinar cuál es el procedimiento exigido. Si bien la característica medular es que el procedimiento debe ser justo, a través de la jurisprudencia normativa se han identificado componentes básicos del debido proceso de ley, tales como una notificación adecuada y la oportunidad de ser escuchado y de defenderse. Al determinar si un

procedimiento cumple con los requisitos constitucionales del debido proceso de ley, deben analizarse los siguientes factores: 1) el interés privado que se pueda ver afectado por la actuación oficial; 2) el riesgo de una determinación errónea debido al proceso utilizado y el valor probable de garantías adicionales o distintas, y 3) el interés gubernamental protegido.[37]

Específicamente, en el contexto del derecho administrativo la notificación es requisito indispensable para la validez del procedimiento administrativo de carácter adjudicativo en sus distintas etapas, por lo que el requisito de ser oído implica el de haber sido notificado.[38]

Del mismo modo, la notificación de órdenes, resoluciones y sentencias ha sido reiteradamente protegida por nuestro ordenamiento jurídico, ya que sirve un propósito lógico y sabio en la administración de la justicia. Ello, permite a las partes advenir en conocimiento real de la determinación tomada, a la vez que le otorga a las personas cuyos derechos pudieran verse transgredidos una mayor oportunidad de determinar si

---

[37] Ramírez v. Romero Barceló, 112 D.P.R. 716 (1982).

[38] D. Fernández Quiñónez, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da Edición, Editorial Forum, 2001, págs. 365-366.

ejercen o no los remedios que le han sido concedidos por ley.[39]

La sección 2123 de la L.P.A.U., *supra*, dispone que las agencias vienen obligadas a celebrar vistas públicas si su ley orgánica u otra ley así lo dispone. Sin embargo, tienen discreción para determinar la necesidad de celebrarlas en las demás circunstancias.

El Reglamento para Procedimientos Adjudicativos de la Junta de Planificación dispone, en lo pertinente, lo siguiente:

> La Junta podrá ordenar la celebración de vistas administrativas a iniciativa propia o a petición de partes, o vistas públicas en cualquier caso en que entienda que merecen seguir ese procedimiento, cuando así lo establezca la reglamentación o legislación vigente.[40]

Sin embargo, de conformidad con su ley orgánica, la Junta debe ejercer sus funciones cumpliendo con la política pública que le fue encomendada de "fomentar la participación de la ciudadanía en el proceso de planificación de Puerto Rico".[41] Específicamente, es deber de la Junta "ofrecer el máximo de participación posible a la ciudadanía en el proceso de planificación".[42]

---

[39] Véase, <u>Asoc. de Vecinos de Altamesa v. Mun. de San Juan</u>, 140 D.P.R. 24 (1996).

[40] Reglamento Núm. 6031 de 12 de noviembre de 1999, Sección 7.01.

[41] Ley Núm. 75, *supra*, sec. 62v(a).

[42] Íd. sec. 62v(b) y (c).

No albergamos duda de que Plaza tiene un interés propietario que podría verse afectado con la aprobación de un nuevo proyecto en el Complejo Deportivo de la Capital. Cientos de personas al visitar las diferentes facilidades del Complejo Deportivo de la Capital al cerebrarse diferentes eventos, utilizan los edificios de estacionamiento de Plaza. Por ello, lejos de ser especulativo, el interés propietario de Plaza que le lleva a procurar que cada nuevo proyecto que intente añadir el Municipio en el Complejo Deportivo de la Capital cuente con los espacios de estacionamiento requerido no podía ser livianamente atendido por la Junta.

Además de la actuación de la Junta de no resolver oportunamente la solicitud de intervención presentada por Plaza; de la imprecisión de la Junta al resolver cuál es la disposición del Reglamento Núm. 4, *supra*, que utilizó como fundamento de su aprobación; y de la deficiencia – ya señalada – que existe en el Reglamento Núm. 4, *supra*, para atender casos como el presente nos parece que la Junta debió haber celebrado una vista pública.[43] De esta forma se garantizaría adecuadamente el debido proceso de ley de Plaza.

---

[43] Ya en <u>Mun. de San Juan v. J.C.A.</u>, *supra*, expresamos que en virtud de la sección 2155 de la L.P.A.U., *supra*, cuando se presenta una solicitud de intervención, la agencia tomará en cuenta varios factores para decidir si ha de conceder o denegar la intervención requerida. Allí expresamos, además, que dicha solicitud claramente intima **la obligación de la agencia de responder a tal solicitud, ya sea que la admita o la deniegue.**

Después de todo, al ejercer su discreción, la Junta no puede dejar de cumplir con la propia ley que la creó ni hacer abstracción de la política pública por la cual fue creada. En virtud de su ley orgánica, es su deber ofrecer el máximo de participación posible a la ciudadanía en el proceso de planificación. Al evaluar una consulta de ubicación en un área como el Complejo Deportivo de la Capital, debe hacer un cuidadoso análisis de modo que se pueda evitar y corregir cualquier deficiencia en espacios de estacionamiento que exista. Sólo de esta forma, podrá cumplir cabalmente la política pública que le fue encomendada de velar por la ordenada y adecuada utilización de nuestros escasos terrenos y recursos naturales.

Como advertimos en Mun. de San Juan v. J.C.A., *supra*, tanto la Junta como A.R.P.E. comparten unas facultades de gran alcance, que se pueden prestar para abusos serios tanto cuando se conceden los permisos que se solicitan como cuando estos se deniegan. Por ello, es de primordial importancia que sus actuaciones sean transparentes siempre.[44]

En vista del resultado al que llegamos al resolver el primer señalamiento de error, y de que corresponde a la Junta evaluar si los 1,457 espacios de estacionamientos que proveería el edificio propuesto serían suficientes, resulta innecesario discutir el tercer señalamiento de error.

---

[44] *Supra*, a la pág. 699.

III

Por los fundamentos antes expuestos, revocamos al Tribunal de Apelaciones.  Se devuelve el caso a la Junta para que cumpla con lo aquí resuelto.


Efraín E. Rivera Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio de San Juan

      Recurrida

        v.

Junta de Planificación,
Administración de Reglamentos y
Permisos

      Agencias Recurridas

Plaza las Américas, Inc.

      Peticionaria

CC-2004-1212

SENTENCIA

San Juan, Puerto Rico, a 18 de octubre de 2006.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integra de la presente, revocamos al Tribunal de Apelaciones. Se devuelve el caso a la Junta de Planificación para que cumpla con lo en ella resuelto.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton inhibido. Los Jueces Asociados señor Rebollo López y señor Fuster Berlingeri no intervinieron. La Juez Asociada señora Rodríguez Rodríguez disiente sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo